Timothy Lee HUFFMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01-83-0732-CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 30, 1984.

Stanley Schneider, Houston, for appellant.

Timothy G. Taft, Houston, for appellee.

Before EVANS, C.J., and WARREN and JACK SMITH, JJ.

## OPINION

EVANS, Chief Justice.

Appellant was charged by indictment with aggravated kidnapping, aggravated rape, and aggravated sexual abuse. The state abandoned all charges except the count of aggravated rape, and appellant pleaded guilty to that offense. After a presentence investigation was conducted, the court assessed appellant's punishment at 90 years confinement.

A jury convicted appellant's accomplice, Victor Lynn Farris, of aggravated rape, and Farris's punishment was assessed at life imprisonment. *See Farris v. State,* 676 S.W.2d 674 (Tex.App.—Houston [1st Dist.], 1984).

For the reasons hereinafter stated, we reverse the trial court's judgment in the instant case and remand the cause for a new trial.

In his first ground of error, appellant contends that the trial court improperly admonished him on the consequences of his plea of guilty. In his second ground of error, he argues that his plea was involuntary because it was based upon promises made to him by the prosecutor and his defense attorney that he would receive a lenient punishment in exchange for his cooperation. In his third ground of error, he contends that he was denied effective assistance of counsel because his attorney's promises of leniency induced him to plead guilty. We overrule the first ground of error and sustain the second and third grounds.

■ Tex.Code Crim.P.Ann. art. 26.-13(a)(2) (Vernon Supp.1984) reads in pertinent part as follows:

Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of ... the fact that the recommendation of the prosecuting attorney as to the punishment is not binding on the court. Provided that the court shall inquire as to the existence of any plea bargaining agreements between the state and the defendant and, in the event that such an agreement exists, the court shall inform the defendant whether it will follow or reject such agreement in open court and before any finding on the plea. Should the court reject any such agreement, the defendant shall be permitted to withdraw his plea of guilty or nolo contendere ....

Thus, the trial court, prior to accepting a plea of guilty, is required to (1) admonish the defendant of the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court; (2) inquire as to the existence of any plea bargain agreement between the state and the defendant; (3) if such an agreement exists, inform the defendant whether it will follow or reject such agreement in open court and before finding on the plea; and (4) if the court rejects such agreement, permit the defendant to withdraw his plea of guilty. The state agrees that the trial court, upon rejecting a plea bargain agreement, has an affirmative duty to admonish the defendant that he is permitted to withdraw his plea of guilty. *See Escobedo v. State,* 643 S.W.2d 243 (Tex.App.—Austin 1982, no writ); *see also Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

■ Prior to accepting appellant's plea of guilty in the case at bar, the trial court

inquired as to the voluntary nature of appellant's plea, admonished the appellant that the range of punishment was between 5 years and 99 years or life and a fine of up to $10,000, and also inquired of appellant whether there was a plea bargain agreement. Appellant said there was not, and the court then asked:

THE COURT: You are proceeding to the court without a recommendation, a request by the state, but no firm recommendation by the state in this case after a presentence investigation report, is that your understanding?

DEFENDANT: That is correct, sir.

THE COURT: Mr. Mock, [defense counsel] is that your understanding?

MR. MOCK: It is, Your Honor.

THE COURT: Ms. Bratten [prosecutor]?

MS. BRATTEN: Yes, Your Honor.

The court then referred to the stipulation in evidence as state's Exhibit 1, explaining:

It shows there is no plea bargain agreement at this time, and it merely states that the state requests the court not to assess more than thirty years in the Texas Department of Corrections. You understand, Mr. Huffman, a request is not binding upon the court. Do you understand that?

DEFENDANT: Yes, sir.

THE COURT: Merely it is their input.... Again, I must make sure, Mr. Huffman, that you understand a request is not binding upon this court in this case.

DEFENDANT: Yes, sir, Your Honor.

After the presentence investigation was completed, the trial court held a hearing to impose sentence. During the course of that hearing, the state announced that it had a brief statement it would like to make to the court. The prosecutor advised the court that appellant had voluntarily testified in the case involving his co-defendant, that his testimony had been "extremely helpful" to the jury, and that the jury, the complainant and her husband were agreeable to the prosecutor's recommendation of a thirty year sentence for appellant. The prosecutor advised the court that appellant

had been "willing to go ahead and testify against Mr. Farris without any promise from me, other than I would make a recommendation to the court on his behalf if he were to plead guilty on the case." Defense counsel agreed with the prosecutor's remarks, indicating that he and his client had participated in discussions regarding appellant's testimony in the co-defendant's case, and adding that the prosecutor had kept his word with regard to recommendations to the court. At that point, the court announced that it had studied the presentence investigation report, that it had taken into consideration everything the prosecutor and defense counsel had expressed to the court, and that it assessed appellant's punishment at 90 years confinement. Neither defense counsel nor appellant made any response to the court's announcement, and the court did not admonish appellant with respect to the withdrawal of his plea of guilty.

At the hearing on appellant's motion for new trial, Mr. Robert Moen, the prosecutor, testified that he had negotiated with appellant and the defense counsel regarding appellant's plea of guilty. He said he had two or three discussions prior to appellant's plea, and that he had also discussed the case with the complainant and her husband. He said the complainant was very afraid of the co-defendant, but that she did not have the same fear of appellant. When asked whether he had made any promise to appellant, he replied:

Basically, what I promised Mr. Huffman I would do is I would get in touch with the complaining witness. After the case was over with, I told him I was going to specifically recommend thirty years to the judge, with an affirmative finding that a deadly weapon was used on his case, and I was going to recommend a term of thirty years.

The prosecutor further testified that he told appellant that "if he testified I wanted him to testify in front of the jury without any specific promise being made from the state as to a term of years he was going to receive." He said he told appellant that "I

thought he should at least realize that the only thing he had to bargain with was his testimony," and that it would be helpful to his case, as far as punishment, if his testimony in front of the judge and jury showed that he was generally remorseful for what he had done and that he was testifying truthfully.

The prosecutor then was asked about any promises he had made regarding recommendations of leniency.

Q. Did you make any promise about your action towards a recommendation of leniency?

A. I told him that I would recommend and make a strong pitch on his behalf as I could that he be given considerably less than Farris received because of his cooperation, and because of his testimony and because of his attitude....

Q. Prior to his pleading guilty?

A. That is correct....

Q. Have you made this sort of promise to other people before, other defendants before about testifying, with no specific promises?

A. I have a couple of times in the past, yes, sir.

Q. And have you, after the people cooperated and testified—have you then done the same thing?

A. Yes.

Q. Making a specific recommendation?

A. Right. I had in mind a specific term when I was talking to Huffman all along, but I just didn't really want to relate that to him and I didn't want the jury to think he was receiving thirty years without doing anything about it, without helping in any way, and I didn't want, you know—we didn't really absolutely have to have him, but I wanted it very much. And his testimony was very helpful, but I didn't want him so bad—and we didn't need him so bad—that we had to do any type of specific dealing with him, as far as his plea, as far as a term of years goes.

Finally, the prosecutor was asked whether the results in this case affected his manner of handling such pleas and whether he felt any promises to appellant induced him to plead guilty.

Q. Has the result of this particular case affected you at all in your future dealings with defendants?

A. Yes, I think it has. I think I have learned a lesson that I have to now be more specific with defendants when I deal with them, and I have to—feel like I really have to make a firm committment to them as to the terms of years.

Q. Do you feel you made any promises to Mr. Huffman that would have induced him to plead guilty?

A. I did not make any specific promise to him, other than the promises I mentioned to you, but I think it would be fair to characterize the conversations that I had with Mr. Huffman by both Mr. Mock and myself—that he relied on our experience in the courthouse and our expertise in the area of criminal law in reaching the conclusion he did, and both of us did recommend to him it would be the smart thing to do on his behalf if he were to testify against Farris, agree to testify against Farris and enter a plea of guilty.

The prosecutor conceded that there was no significant difference between the 90 year sentence imposed against appellant and the life sentence imposed against his co-defendant, and that appellant had received no benefit from his plea of guilty and cooperation in the case against his co-defendant.

Mr. Ronald G. Mock, who had been appointed to represent appellant at trial, testified that he had entered into plea bargaining arrangements or discussions with the prosecutor, Mr. Moen. He said they had discussed appellant's testimony in the case against the co-defendant in exchange for leniency for appellant and that he had made certain assurances to appellant regarding such matters. He also said that he had received the assurance of the prosecutor.

Q. And did Mr. Moen give any assurances to you?

A. Yes. Mr. Moen gave me his word that he would do whatever he could. We did discuss between ourselves a thirty-

year term. We did not, however, convey that to Mr. Huffman because, as usual, in the prosecution of these types of cases, if the jury is aware that the co-defendant has accepted a deal in exchange for his testimony, it diminishes the level of the state's case, as far as punishment is concerned, to where the jury would feel that if I give—"if they have agreed to—that this man would get thirty years then it is only worth thirty years, it is only a thirty-year case, so we are not going to separate them, we are going to give him thirty years also." So, therefore, we could not and did not, and that was the only reason we did not convey it to Mr. Huffman.

Mr. Mock further testified that prior to the hearing on appellant's plea of guilty, he had a 20 to 30 minute discussion with appellant concerning the questions the judge was going to ask him.

I told him what would be asked of him and what his answer should be. I instructed him not to hesitate, because the court possibly would not take the plea if he hesitated and that all of his questions should be answered "yes, sir," to the judge and give his plea. It was also my suggestion and my hard suggestion to him that he plead guilty, that based on my experience around the courthouse that—and my knowledge of the court system, that based on that system and the way it operated and runs, to do anything else would be just a controversy, and just a denial of due process and justice.

Mr. Mock was then asked what advice he gave his client regarding his answer when the court asked him if anyone had promised him anything in exchange for his plea.

Q. Did you tell him that when the court asked him to—asked him if anyone promised him anything, to tell him there was no agreement?

A. Those were my instructions.

Mr. Mock further testified that he and Mr. Moen had communicated their arrangements to the court before any testimony was taken or any plea made by appellant,

so "the court understood that there was no formal agreement, but there were promises made" to appellant prior to the plea being entered.

In response to questions asked by the court, Mr. Mock further testified:

Q. Was there any question in your mind at that time about whether or not the court was bound by any asking for leniency by the state based upon the admonishments?

A. Based upon the admonishments and the law, no, sir. Based on standard courtroom operating procedure and the way the system works around here, when somebody gives their word, yes, sir, it was my opinion that the court was not legally bound, but morally bound to consider leniency for Mr. Huffman.

Responding to further questioning by appellant's counsel on appeal and by the court, Mr. Mock testified:

QUESTIONS BY MR. SCHNEIDER:

Q. Do you feel that the court knew that the plea bargaining agreement included the recommendation of leniency?

A. Yes, sir, I do.

Q. And do you feel the court knew that Mr. Moen was going to recommend a specific term of years?

A. Yes, sir, I do. We had discussed it.

Q. And did you expect the court to follow the state's recommendation in this case?

A. If I was to ever practice criminal law and to keep my word in Harris County again, yes.

Q. And the same—you felt that was Mr. Moen's feeling?

A. Absolutely. I have been destroyed. I don't have a word in Harris County anymore, as far as I'm concerned. I don't care to practice criminal law any more.

QUESTIONS BY THE COURT:

Q. Mr. Mock, was there a plea bargain agreement in this case, yes or no?

A. No, sir. No, sir, there was never a plea bargain agreement. I want to make that absolutely clear for the record.

There was never a plea bargain agreement.

QUESTIONS BY MR. SCHNEIDER:

Q. Mr. Mock, was there any inducement by you and Mr. Moen?

A. I personally feel, sir, that I convinced Mr. Huffman to plead guilty.

Appellant testified that both the prosecutor and his defense counsel had promised that he would receive leniency if he cooperated with the state. He said that those promises induced him to plead guilty. He testified that his defense counsel had coached him on how to answer the court's questions at the hearing on his plea of guilty. In response to questions by the court, he acknowledged that after the court imposed sentence, he had not stated that he wanted to withdraw his plea of guilty; that he understood the court was not bound by the state's recommendation; and that he could "assume" he was aware that no plea bargain agreement had ever been presented to the court. He further testified, in response to his counsel's questions, that the promises made to him by the prosecutor and by his attorney had induced him to plead guilty and that they had given him their word that the court would follow the state's recommendations. He indicated that he would not have pleaded guilty if he had known that the court would reject the state's recommendation and assess a 90 year sentence.

As we stated earlier in this opinion, the trial court is required to advise a defendant of his right to withdraw a plea of guilty if the court knows that such plea is based upon an agreement between the prosecutor and the defense counsel, and the court is unwilling to impose sentence in accordance with such agreement. The record in the case at bar does not conclusively show that the court knew, at the time the defendant entered his plea of guilty, that such plea was based upon the agreement which the prosecutor and the appellant's trial counsel both testified they had made. Indeed, our respect for the trial court's integrity compels the conclusion that the court was not aware of the agreement at any time during the hearing on appellant's plea of guilty. Although the court was aware that the prosecutor intended to make a "request for leniency," there is no showing that the court knew that such request was in exchange for appellant's agreement to plead guilty and to testify at his co-defendant's trial. The record reflects that the trial court properly admonished appellant on the basis of the representations made to him by the prosecutor and defense counsel at the time the plea of guilty was entered, and at that point in the proceeding, no error is shown. We accordingly overrule appellant's first ground of error.

■ The record does show, however, that appellant's plea of guilty was not voluntarily and knowingly made. To the contrary, the record conclusively establishes that his plea was based upon the promises made to him by the prosecutor and by his own defense counsel that the state would "recommend" leniency in exchange for his cooperation and plea of guilty, and that his plea rested upon their assurances that the court would follow such recommendation. The uncontroverted testimony of both the prosecutor and appellant's trial counsel clearly show that appellant was never advised of the risks involved in entering his plea to the court, and that appellant was purposely "kept in the dark" to insure the purity of the state's case against appellant's co-defendant.

■ The entry of a plea of guilty involves the waiver of constitutional rights, and such a waiver must not only be voluntary, but must be done knowingly and intelligently "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). In the case at bar, the record shows that the appellant was not afforded sufficient information to make a knowing and intelligent waiver of his constitutional rights, and that his plea of guilty was based upon misleading advice as to the state's ability to assure him of leniency from the court. This rendered his

plea involuntary. *See Ex parte Young,* 644 S.W.2d 3 (Tex.Crim.App.1983).

 We also find that appellant was denied effective assistance of counsel at trial. Although both the prosecutor and defense counsel knew that appellant was basing his plea of guilty on the state's promise to recommend leniency, appellant's counsel, with the tacit approval of the prosecutor, instructed his client to answer the court's questions so as to keep that matter from the court's attention. Thus, the court was not fully apprised of the true circumstances underlying appellant's plea of guilty, and the hearing on appellant's plea became, in effect, a sham proceeding. We cannot condone such deceptiveness in our courts, and, no matter how artful, we view it as injurious to both bench and bar.

We find, as a matter of law, that appellant's plea of guilty was involuntary and that the trial court abused its discretion in refusing to grant appellant's motion for a new trial. We further find that appellant was denied effective assistance of trial counsel. We sustain grounds of error number two and three.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.