**Victor Lynn FARRIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–83–0609–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 30, 1984.

James Stafford, Houston, for appellant.

James C. Brough, Houston, for appellee.

Before EVANS, C.J., and BULLOCK and WARREN, JJ.

OPINION

BULLOCK, Justice.

A jury convicted appellant of aggravated rape and assessed punishment at confinement for life. Appellant's accomplice, Timothy Huffman, testified against appellant at appellant's trial and later pled guilty in a separate case to the same charge. Huffman received a court-imposed sentence of 90 years. See *Huffman v. State*, 676 S.W.2d 677 (Tex.App.—Houston [1st Dist.]), issued this date.

We reverse and remand.

Appellant does not challenge the sufficiency of the evidence, and we hold that sufficient evidence exists to support appellant's conviction. Appellant asserts six grounds of error containing five basic challenges. We deal only with grounds of error 4 and 5, *Coberly v. State*, 644 S.W.2d 734 (Tex.Crim.App.1983), which asserts that the state's failure to disclose promises regarding leniency in exchange for the testimony of appellant's accomplice, Huffman, violated appellant's rights to due process.

Appellant's defense centered on alibi. Appellant claimed that he and Huffman had taken appellant's gun to the Brazos River Turnaround to practice target shoot-

ing, and on the way, they decided to stop and go swimming. Appellant testified that while they were swimming, an unidentified, unseen individual struck him in the ribs and on the head, rendering him unconscious. Appellant contends that when he regained consciousness, his keys, car, and pistol were gone, whereupon he made his way to the house of a friend, notified law enforcement authorities of the alleged assault against him, and later sought medical treatment for his injuries.

Huffman's testimony at appellant's trial effectively destroyed appellant's alibi defense. Huffman testified that, on the evening in question, he and appellant decided to "cruise" Sharpstown Shopping Mall so that appellant could abduct a woman and forcibly have sex with her, before he went overseas on a petrochemical job. Huffman testified that they prowled around Sharpstown Shopping Center for some time, watching, evaluating, and ultimately rejecting some 20 to 30 women. The pair then left the shopping center and ultimately spotted the complainant in the parking lot of a grocery store at the intersection of South Gessner and Harwin. At this point, Huffman testified appellant gave him the gun and told him to abduct the complainant and bring her to the Turnaround, where appellant would meet them.

The indictments against these men charged each of them with three offenses: aggravated kidnapping, aggravated sexual abuse, and aggravated rape. The state elected to proceed against appellant only on the aggravated rape charge.

Prior to Huffman's testimony, the assistant district attorney disclosed to the trial court, out of the presence of the jury, that the only agreement with the witness had been to drop the aggravated kidnapping and aggravated sexual abuse charges, to allow him to plead guilty to the aggravated rape charge, and to notify the judge who was hearing that case that Huffman had been cooperative and truthful in testifying against appellant. Huffman's attorney also testified before the judge, out of the jury's hearing, that the state had made no

promises regarding recommendations for leniency. Huffman testified before the jury that he had received no promises of leniency.

■ We sustain appellant's fourth and fifth grounds of error, observing the following pertinent language from the United States Supreme Court:

... deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." ... "the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." ... suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution." When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within this general rule.

*Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972). In *Giglio*, the record contained two different affidavits referring to newly discovered evidence. One affidavit stated specifically that the prosecution had promised a witness that if he testified, the government would not prosecute him. The second affidavit stated that the United States attorney had consulted with the witness and his attorney before trial, emphasizing that the government would prosecute the witness if he did not testify, and that if he did testify he would have to rely on the "good judgment and conscience of the government." The Supreme Court held that the state has an affirmative duty to disclose those promises and incentives given to a witness, or communicated to the witness's attorney, which are given in exchange for the witness's testimony, because of their bearing on the witness's credibility.

The Texas Court of Criminal Appeals has consistently followed the standards outlined in *Giglio, supra:*

The jury should have been given the opportunity to judge [the witness's] credibility for themselves. The trial court's

refusal to prevent disclosure of the state's plan ... deprived the jury of that function.

Further, we find that such a deprivation amounted to a denial of due process. It is axiomatic that a state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction. This rule does not cease to apply merely because the false testimony goes only to the credibility of the witness. ... The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence.

... Even if we assume this ignorance [that the witness did not know of the state's promise], arguendo, we find that the prosecutor's silence as to the plan ... conveyed an impression to the jury which the State knew to be false and one which should have been corrected.

*Burkhalter v. State*, 493 S.W.2d 214, 218 (Tex.Crim.App.1973).

*Giglio* and *Burkhalter* make it clear, therefore, that the state must disclose to the jury the plans and promises that it conveys to a witness or to the witness's attorney, because these could affect the credibility of that witness in the eyes of the jury and thus affect the jury's consideration and weighing of the witness's testimony. A failure to disclose this information is a denial of the defendant's due process rights, in that it permits the jury to consider potentially biased information against the defendant without knowing of the bias or of the reason for the bias.

The record contains a supplementary volume, consisting of testimony given by Huffman, Huffman's attorney, and the assistant district attorney who did the pretrial work in both cases. This testimony was given after Huffman later entered his guilty plea to the charge of aggravated rape stemming from his participation in this incident. Appellant contends that this supplementary portion of the record makes it clear that the prosecution had made, prior to Huffman's testimony, certain promises regarding leniency to Huffman in exchange for his testimony against appel-

lant, and that the prosecution failed to disclose this material to the jury at appellant's trial. We agree. See this court's opinion in *Huffman v. State, supra.* The state's position is that this supplementary transcript is not properly part of the record, since it is part of the record of a "completely different case," and even if it is properly a part of the record in the case at bar, this supplementary portion of the record discloses no agreement or offer by the prosecution to recommend leniency *before* Huffman testified at appellant's trial.

■ The trial court, in preparing a record for appeal, has wide discretion to include supplementary material "if the trial court deems that a supplemental record or any other modification of the record be necessary to make the record speak the truth, for any reason." Tex.Code Crim.P. Ann. art. 40.09, subsection 7 (Vernon 1983). If the state wishes to contest the inclusion of a supplemental record, art. 40.09, subsection 7 requires the state to object to that supplementation. In the instant case, the state failed to object to the inclusion of the supplementary volume, and its claim that this supplementation is not part of the record on appeal is without merit.

■ The failure to disclose the inducements in this case was not harmless error. Even without Huffman's testimony, the state arguably had sufficient evidence to enable the jury to convict appellant. Huffman's testimony, however, is the only evidence in the record that immediately and directly refutes the appellant's alibi. We cannot say that allowing an accomplice to give testimony which directly refuted appellant's claim that he did not participate in the offenses charged, without having given the jury pertinent information required by the Due Process Clause under *Giglio* and *Burkhalter* regarding inducements made to that witness, constituted harmless error beyond a reasonable doubt.

The record demonstrates either that the state specifically promised Huffman's attorney a recommendation of a 30-year sentence in exchange for Huffman's testimony against appellant, or that the State prom-

ised at least to notify the court in Huffman's case of Huffman's cooperativeness in prosecuting appellant and to request leniency in that case. One or both of these promises occurred before Huffman testified against appellant and in neither case did the state disclose that agreement to the jury.

We reiterate the language contained in *Huffman v. State, supra,* that "we cannot condone such deceptiveness in our courts, and, no matter how artful, we view it as injurious to both bench and bar."

The judgment of the trial court is reversed, and the cause is remanded for a new trial.