**James Henry MESSER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00568–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 21, 1988.

Rehearing Denied Aug. 31, 1988.

Stanley Schneider, Houston, for appellant.

John B. Holmes, Dist. Atty., Harvey Hudson, Asst. Dist. Atty., Harris County, for the State.

Before EVANS, C.J., and SAM BOSS and DUNN, JJ.

## ON MOTION FOR REHEARING

EVANS, Chief Justice.

The State's motion for rehearing is granted, this Court's original opinion delivered March 3, 1988, is withdrawn, and the following opinion is substituted. The trial court's judgment is affirmed.

Appellant was indicted for the offense of murder. He waived his right to a trial by jury and entered a plea of "no contest." On that plea, the court found him guilty of the offense charged and assessed his punishment at 25 years confinement.

In three points of error, appellant contends, in effect, that his plea of no contest was based upon his trial counsel's erroneous and misleading advice, which rendered his plea involuntary and caused him to be denied effective assistance of counsel at trial.

After a number of trial settings, appellant's case was scheduled for a non-jury trial in December 1986. According to appellant's testimony at the hearing on his motion for new trial, appellant's trial counsel, Ms. Jan Woodward Fox, advised him at the December hearing that the trial court had offered to "grant" him eight years' probation with a $1,000 fine if he would plead guilty to the charge of murder. Appellant testified that, in response to that

advice, he told Ms. Fox that he did not want to plead "guilty" to a murder charge but that he would be willing to plead "no-contest" if the judge would still give him probation.

The case was reset for trial for February 6, 1987, and on that date, appellant's counsel, Ms. Fox, and the prosecutor, Ms. Gaynelle Jones, met with the trial judge, the Honorable Thomas Routt, in his chambers. Both counsel testified, at the hearing on the motion for new trial, that the purpose of their informal meeting with the judge was to determine whether he would consider "the entire range of punishment" in a plea on a pre-sentence investigation. It appears to be undisputed that the trial judge made a comment during the conference to the effect that he "would *consider*" a sentence of eight years' probation and $1,000 fine.

The case was re-set for a later trial date on February 27, 1987. At that time, appellant signed a waiver of his right to trial by jury, an agreement to stipulate evidence, and a judicial confession. He also entered a plea of "no contest." Before the court accepted that plea, it asked the following questions to determine the voluntariness of the plea:

> THE COURT: Have you been forced, threatened, or coerced in any way into entering this plea, sir?
>
> THE DEFENDANT: No, I have not, Your Honor.
>
> THE COURT: Have you been offered or promised anything other than plea negotiations with the State to entice you to enter this plea?
>
> THE DEFENDANT: No, I have not, Your Honor.
>
> THE COURT: Have you been placed in fear in any manner forcing you to enter this plea?
>
> THE DEFENDANT: No, I have not, Your Honor.
>
> THE COURT: Are you entering this plea of your own free will?
>
> THE DEFENDANT: I am.

Later, after stating the range of punishment, the court asked:

> I understand that you and the State have not reached an agreement as to the punishment to be recommended in this case; is that right, sir?
>
> THE DEFENDANT: That is correct.
>
> THE COURT: Under those circumstances the *only* thing that would restrict the Court in assessing punishment is the range of punishment that I've already given you. (Emphasis added.)
>
> The Court will consider all alternatives to that punishment as well. However, the Court is not required to grant you that alternative treatment just because you qualify.
>
> The Court would order a Pre–Sentence Investigation in this case and use that report to assist it in assessing the punishment it feels appropriate.
>
> The State further is reserving the right to argue for whatever punishment it feels appropriate at a later hearing.
>
> Understanding all of what I have told you, Mr. Messer, are you continuing your plea of Nolo Contendere in this matter?
>
> THE DEFENDANT: I am, Your Honor.

The court then ordered a pre-sentence investigation report and scheduled a hearing for punishment and sentencing on April 16, 1987. At that time, the court considered appellant's pre-sentence investigation report, heard appellant's testimony in his own behalf, and then sentenced appellant to 25 years confinement.

At the hearing on his motion for new trial, appellant testified that his trial counsel, Ms. Fox, told him "there would be no problem" getting probation if he had not lied about his police record. He said that he entered his plea of no contest and made the stipulation of evidence based entirely on her advice that he would receive a sentence of eight years probation and $1,000 fine. He testified that if he had not received such advice, he would not have signed the no-contest plea and the stipulation of evidence. He said that he understood, based on his conversations with his trial counsel, that the judge intended, in deciding on punishment, to consider the information in the pre-sentence investigation report only if the report indicated that

he had lied. Appellant testified that when he entered his plea, he believed that the judge had already made the decision to give him probation, provided that his pre-sentence investigation did not show that he had lied about his past record.

The appellant's pre-sentence investigation report did not contain any information that appellant had not earlier disclosed to Ms. Fox. But according to Ms. Fox's testimony at the hearing on appellant's motion for new trial, she never informed the court of the circumstances surrounding appellant's arrest for carrying a weapon. Ms. Fox gave the following testimony at that hearing:

Q. As to the Defendant's criminal history, that's what the question is in reference to. The only items you would have conveyed to the Court, if you did, during the conversation, would have been concerning the carrying of a weapon and a prior accosting a female?

A. With—with—respect to Mr. Messer's record?

Q. Criminal history.

A. Yes, ma'am, and the circumstances of this offense.

. . . . .

Q. Had Mr. Messer told you or had you told Judge Routt, prior to the Judge getting the PSI, that Mr. Messer had taken—his pistol over to someone's house and confronted this person with the possibility of his having had an affair with his wife and that this had occurred back in 1973?

A. Mr. Messer had told me that in previous conversations, yes, ma'am.

Q. But you had not conveyed that to the Court at the time of your discussions of the possible consideration?

A. I did not convey that to Judge Routt, no, ma'am, I did not.

Q. You also did not convey to the Court the other portion of the contained in "Adult Court History" where it said, "He then," that's subsequent to his having gone over to this friend's house in '73 and confronted him, "He then went to the parents' home of the woman—of his wife and kicked down the door but found no one home?"

A. I did not convey that to—I had that information, I had from previous conversations with Mr. Messer. That was not specifically—in fact, that was not even generally discussed, as I recall, with Judge Routt—

Q. So—

A. —at the time that Miss Jones and I were meeting or at any time, other than the—the actual—Sentencing Hearing.

That new information was contained in the pre-sentence investigation report.

Ms. Fox testified that she informed appellant, after the December meeting with the court and Ms. Jones, that she thought he would get probation. She also testified that when she met with Ms. Jones in the judge's chambers, it was mentioned that the court would be able to grant probation if the court made no finding regarding the use of a deadly weapon.

Ms. Fox testified that, based on her conversations with the court, she advised appellant that if he entered his plea of no contest, he would be placed on probation for eight years and fined $1,000. She repeated this advice several times, once after the December meeting with the court and Ms. Jones, once after a February meeting with the court and Ms. Jones just before appellant pleaded no contest, and finally, the night before the sentencing hearing after she had reviewed the pre-sentence investigation report with appellant.

Ms. Fox testified that she warned appellant that if he had lied about anything, the judge could be disposed to "undo" what she understood to be an agreement. She testified that appellant told her that if confinement were a possibility, he would prefer a trial. She further testified that, based on the information she had given the judge and the information contained in the PSI, she believed that appellant would receive the anticipated probated sentence and fine. She testified that it was her understanding, at the time of appellant's plea, that the sole purpose of the PSI was to give the victim's family "a chance to ventilate" and to provide the court an opportuni-

ty to confirm appellant's work history, psychiatric background, and criminal record. She said she believed that as long as the PSI report contained no additional criminal record, it was simply a formality. She further testified that she asked the judge, "What if I'm wrong about his criminal background? Would the court let him withdraw the plea?" And the judge replied, "I would consider it, but ... it would be an uphill battle."

Ms. Fox testified that she believed the court was committed to a probated sentence because the court had first mentioned it at the December meeting, and it was discussed again at the February meeting. She further testified that when she asked the court, at appellant's request, if the plea could be no contest rather than guilty, the court agreed to the no contest plea. In addition, she said, the court seemed willing to conduct the proceeding on the same day and postponed the sentencing hearing only because of the insistence of the prosecutor.

In essence, the testimony of appellant and his trial counsel, at the hearing on the motion for new trial, tended to show that appellant's plea of no contest was based upon his counsel's erroneous advice that he would receive a probated sentence if he pleaded no contest. We must determine: (1) whether the trial court, sitting as a trier of fact at the hearing on appellant's motion for new trial, was bound to accept this testimony as conclusive proof of the involuntary nature of appellant's plea; and (2) whether the legal representation afforded appellant by his trial counsel was so ineffective as to require a reversal of his conviction.

■ A plea of no contest, like a plea of guilty, involves a waiver of constitutional rights, which must not only be voluntary, but must be done knowingly and intelligently with sufficient awareness of all relevant circumstances and likely consequences. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *Huffman v. State*, 676 S.W.2d 677, 682 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd); *Murphy v. State*, 663 S.W.2d 604, 610 (Tex.App.—Houston [1st

Dist.] 1983, no pet.). Thus, it has been held that a conviction cannot be sustained when a plea of guilty or no contest has been motivated by significant misinformation conveyed by the defendant's counsel or some other officer of the court. *McGuire v. State*, 617 S.W.2d 259 (Tex.Crim.App. 1981); *Huffman*, 676 S.W.2d at 682; *Murphy*, 663 S.W.2d at 610. It has also been held that even one deficiency in counsel's representation may be so significant as to constitute ineffective assistance of counsel requiring a reversal of the conviction. *See Huffman*, 676 S.W.2d at 683; *Murphy*, 663 S.W.2d at 610.

We first hold that the trial court was not compelled to conclude from the testimony that the appellant's plea of no contest was not knowingly and intelligently made.

The trial court, sitting as the trier of fact, was the sole judge of the witnesses' credibility and the inferences to be drawn from their testimony. In that fact-finding determination, this Court may not substitute its judgment for that of the trial court. *See Foster v. State*, 687 S.W.2d 65 (Tex. App.—Dallas 1985, pet. ref'd); *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App. 1984).

At the hearing on appellant's motion for new trial, the trial court heard the direct- and cross-examination of appellant and his counsel, and it also heard the testimony of the prosecutor who had handled the case at trial. Based on that evidence, as well as the court's own recollection of the events, it could reasonably have decided that appellant's plea of no contest was made knowingly and intelligently.

Before the court accepted appellant's plea of no contest, the judge specifically asked appellant, in the presence of his counsel, whether he had been offered or promised anything to entice him to enter the plea and whether he was entering the plea of his own free will. The court also obtained appellant's assurance that he had no agreement with the prosecutor regarding the punishment to be recommended. The court then admonished appellant about the range of punishment the court would "consider" and advised him that the range

of punishment was the *only* restriction on the court's decision in assessing punishment. The court explained to appellant that it was not required to grant *any* alternative treatment just because the appellant might qualify, and that the court intended to use the pre-sentence investigation report in deciding what punishment to assess. In response to these admonitions, appellant, in the presence of his counsel, represented to the court that he fully understood the court's warnings; and neither appellant nor his counsel mentioned any of the expectations (which they now assert) that the court would grant probation. Indeed, no complaint was made to the court about the punishment assessed until after the completion of the sentencing proceeding.

The circumstances in this case are quite different from those in the cases cited above. In each of those cases, the involuntary nature of the plea was clearly established by the uncontroverted evidence. In *Murphy,* the trial court made uncontested findings of fact conclusively establishing the involuntary nature of the plea, which had been induced by counsel's statements that the trial judge had agreed to assess punishment at no more than a specified number of years. *Murphy,* 663 S.W.2d at 610. In *Huffman,* the record conclusively established that the defendant's plea was based on promises made to him by the prosecutor and his own counsel that the State would recommend leniency. *Huffman,* 676 S.W.2d at 682. In *McGuire,* the prosecutor assured the defendant, who appeared without counsel, that a particular punishment would be given if he pleaded guilty, and he represented to the defendant that if the court rejected the recommended punishment, the defendant would be allowed to withdraw his guilty plea. Thus, the evidence in that case conclusively established an *improper* assurance that induced the defendant's plea. *McGuire,* 617 S.W.2d at 261.

In this case, we have a different set of circumstances. Here, appellant offered testimony tending to show that, based on the advice of his trial counsel, he expected the court to grant probation. But appellant does not claim that his expectations (or those of his counsel) were based upon any improper assurances of the court or the prosecutor. Indeed, appellant's counsel, Ms. Fox, assured the court, at the hearing on the motion for new trial, that neither the court nor the prosecutor had ever made any improper representations to her or to appellant about the punishment to be assessed. At one point during that hearing, when the judge suggested that he ought to grant the State's motion to recuse, appellant's counsel at trial, Ms. Fox, and his counsel at the hearing, Mr. Cogdell, made the following representation to the court:

> MRS. FOX: Your Honor, if I might too because I might not have even realized what I was saying because as I understand it, any time the Court has a plea on a P.S.I., the Court always has the ability to not do what the Court has indicated and has always had the ability to proceed with a different resolution of the case.

> MR. COGDELL: And—just succinctly for the Court's edification and for the Record, the issue we're here on is not any breach by the Court or any—any failure to—to perform as the Court indicated, the only issue that we're trying to litigate at this point, Judge, is what the expectations of Mr. Messer was [sic] at the time that he pleaded, the voluntariness of that plea being founded on that expectation and the statements by the Court or—or not—the—the only statements that entered into the voluntariness of the plea that we're concentrating on are the statements related by Mrs. Fox to Mr. Messer.

> We are not in any way insisting or arguing that the Court communicated with Mr. Messer or that the Court made any promises or—or any—any bargains. What we are simply urging that the plea was involuntary because of the advice given to Mr. Messer by Mrs.—by—by Miss Fox and that—Mr. Messer's plea was involuntary in the sense that he—his expectations of what would occur were and are in fact different than what did in fact occur.

> MRS. FOX: And, Your Honor, I believe that everything Miss Jones said hap-

pened in Chambers is absolutely correct and true, including concerning different expectations. I believe that my expectations and certainly based upon certain events were unreasonable—reasonable or unreasonable, given what the Court had said and my only purpose here today is to say, one, the Court said nothing more than "Eight years' probation and a thousand-dollar fine." From that I then assumed, and I, albeit incorrectly, that Mr. Messer would receive eight years' probation and a thousand-dollar fine after the Pre–Sentence Investigation.

That belief was not justified and was incorrect and I believe that when Miss McAshan earlier said that I mentioned malpractice, I would have to confess absolutely mentioned malpractice because I think I jumped off those statements in a way so as to advise Mr. Messer unprofessionally and incorrectly that he would receive a probated sentence in this case —when that had not been justified by what the Court had said.

THE COURT: That part that bothers the Court is the fact that your relation seems to indicate that only one factor would be determinative of the punishment to be assessed and that is whether or not there was any previous criminal record of the Defendant that had not been disclosed in preliminary—conversations. The Court considers a number of other things.

MR. COGDELL: Certainly, and we're not arguing.

MRS. FOX: Not at all.

MR. COGDELL: To the contrary. The only thing that we're arguing that this man didn't realize the consequences of his plea at the time he entered it and the—and the responsibility as representative of that client, to that client, was not fulfilled in that he wasn't adequately admonished—

MRS. FOX: He was not.

MR. COGDELL: —by the—by the lawyer, not the Court, Judge.

MRS. FOX: And in fact the Court I think has rightly since in the conversations pointed out that the Court took other matters into consideration, as the Court

is absolutely and professionally not entitled to do but obligated to do.

The failing is on the part of the Counsel when I advised Mr. Messer, as late as the morning of the plea, following conversations based upon the Pre–Sentence Investigation, that he would receive, based upon my expectations, eight years' probation and a thousand-dollar fine. I do not mean in any sense to either testify or to suggest to the Court, and I say this understanding that I am still under oath, that the Court in any fashion said it would not consider other matters.

It was rather my belief and then my communication and my mistaken belief and my communication purely to Mr. Messer, not any indication that the Court indicated that he would not—take those matters into consideration.

MR. COGDELL: With—with—with the limited issues as enunciated to the Court, is the Court comfortable with concluding or at least—least continuing the Hearing? I think I would be.

THE COURT: Yes, under those statements.

Furthermore, both the appellant and his trial counsel, Ms. Fox, admitted that they had heard and understood the court's admonitions *before* the plea was entered, and both acknowledged that they knew the court's determination was restricted *only* by the range of punishment. Yet, on this appeal, appellant complains that his plea was involuntary and that his counsel's representation was fatally deficient.

 The statements made to appellant by his defense counsel about the punishment he might expect if he pleaded no contest simply constituted counsel's predictions, albeit erroneous ones, about the logical outcome of certain trial strategy. In view of the clear admonitions given by the trial court before the plea, which both the appellant and his counsel admit they understood, appellant cannot credibly contend that his plea was involuntary and that he was denied effective assistance of counsel. *See Wellnitz v. Page,* 420 F.2d 935 (10th Cir.1970).

We emphasize that appellant does not assert that either the trial court or the

827

prosecutor acted improperly in the matter. Indeed, the record reflects a logical basis for the trial court's ultimate determination, because the PSI contained information damaging to appellant that was not previously made known to the court.

Having granted and considered the State's motion for rehearing, we withdraw our earlier ruling and overrule appellant's three points of error.

The judgment of the trial court is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

### PER CURIAM.

Appellant argues, in his motion for rehearing, that his trial counsel's statements, about the court's statement concerning probation, were not simply representations of "belief" or "expectation," but instead, were counsel's firm "guarantees" that probation would be granted. Appellant contends that the evidence presented at his motion for new trial conclusively established the involuntary nature of his plea and the ineffectiveness of his trial counsel.

We disagree with appellant's assessment of the evidence presented at the new trial hearing. On cross-examination, appellant acknowledged the trial court's admonishments that the court would consider the full range or punishment for a first-degree felony and that the court's determination of punishment would be influenced by the presentence investigation report. Appellant further admitted that neither he nor his attorney had made any objections to the court's statements at that time. Appellant testified:

**Q** Okay. You didn't say, "Judge, why is the full range of punishment open? I've been told I'm going to get probation"?

**A** No, ma'am, I did not.

**Q** And you did never, when the Judge asked you anything about influencing you into making this plea, you never said, "Yes, I've been promised probation by my attorney"?

**A** No, ma'am. I did not.

**Q** Okay. And when you came into the courtroom on the date that you were sentenced, which was a week ago today, and you took the stand, you—made no representations at that time that you expected the Court to give you probation?

**A** No, ma'am.

On further cross-examination, appellant admitted that at the time he entered his plea of no contest, he knew the effect of the plea would be that the judge would conduct a presentence investigation and would then sentence him. He also testified that when the judge asked him questions concerning the voluntariness of the plea, he answered those questions to the best of his ability, and he admitted that no one during the course of the plea proceedings ever said anything to him about receiving probation and a fine. Specifically, he testified:

**Q** And you at no point indicated to the Judge that that was the reason why you were pleading no contest, did you?

**A** No, ma'am.

**Q** And you at no point during the Sentencing Hearing which was held last Friday indicated to the Court that the reason that you had pled no contest was because of some type of promise or expectation that you would receive eight years' probation of any type?

**A** No, ma'am. I did not.

Based on this testimony and other evidence presented at the hearing on appellant's motion for new trial, we conclude that appellant did not conclusively establish the involuntariness of his plea.

We also conclude that the appellant failed to conclusively establish his claim of ineffective assistance of counsel. The granting of a motion for new trial on the ground of ineffective assistance of counsel is a matter entirely within the trial court's discretion. *Jiminez v. State*, 727 S.W.2d 327, 328 (Tex.App.—Houston [1st Dist.] 1987, no pet.). In considering a motion for new trial, the trial judge possesses broad discretion in assessing the credibility of witnesses and in weighing the evidence to determine whether a different result would occur upon retrial. *Morris v. State*, 696 S.W.2d 616, 620 (Tex.App.—Houston [14th Dist.] 1985), *aff'd*, 739 S.W.2d 63 (Tex.Crim.App.1987); *see also Carr v. State*,

646 S.W.2d 520 (Tex.App.—Houston [1st Dist.] 1982, pet ref'd); *Marinez v. State*, 654 S.W.2d 500, 502 (Tex.App.—Corpus Christi 1983, no pet.).

■ In assessing the evidence presented at the new trial hearing, the trial judge, sitting as the trier of fact, could properly consider the interest and bias of any witness, *Costello v. State*, 98 Tex.Crim. 406, 266 S.W. 158 (1925), and the judge was not required to accept as true the testimony of the accused or any defense witness simply because it was not contradicted. *Key v. State*, 99 Tex.Crim. 612, 270 S.W. 1027 (1925).

Here, the testimony presented by appellant and his counsel at the new trial hearing shows that counsel was fully apprised of the trial court's intent to consider all factors before making an assessment of punishment. Having assured the court that his plea was voluntary and not based on any promises or inducements, and having stood by silently while the court assessed his punishment at the sentencing hearing, appellant cannot now complain that his counsel was ineffective in advising him about the court's intent in assessing punishment.

Appellant's motion for rehearing is overruled.