915 S.W.2d 947 (1996)
Sandy Dean DUSENBERRY, Appellant,
v.
The STATE of Texas, Appellee.
No. 01-95-00799-CR.
Court of Appeals of Texas, Houston (1st Dist.).
February 1, 1996.
*948 Joseph W. Varela, Houston, for appellant.
John B. Holmes, Jr., Dan McCrory, Cindy Marshall, Houston, for appellee.
Before O'CONNOR, HUTSON-DUNN and ANDELL, JJ.

*949 OPINION
HUTSON-DUNN, Justice.
Sandy Dean Dusenberry, the appellant, pleaded guilty to aggravated sexual assault of a child and was sentenced to 20-years imprisonment. In three points of error, the appellant contends his guilty plea was involuntary because he made it based upon misinformation from his trial attorney. Further, the appellant argues his attorney's act of giving misinformation constituted ineffective assistance of counsel. The appellant asks us to reverse and remand this case for a new trial. We affirm.

Standard of Review
The appellant pleaded guilty to the charged offense without an agreed recommendation from the prosecutor. When a defendant pleads guilty without a plea bargain agreement, by his voluntary guilty plea he waives all nonjurisdictional defects that occurred before the entry of the guilty plea. Jack v. State, 871 S.W.2d 741, 743 (Tex.Crim. App.1994); Courtney v. State, 904 S.W.2d 907, 909 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). Because the appellant challenges the voluntariness of his guilty plea, we may consider his points of error. See Broddus v. State, 693 S.W.2d 459, 460 (Tex.Crim.App. 1985); Soto v. State, 837 S.W.2d 401, 403 (Tex.App.-Dallas 1992, no pet.).
We consider the appellant's points of error together because they all deal with the issue of whether the appellant's trial attorney gave the appellant incorrect information that induced the appellant to enter his guilty plea. If so, then the appellant's plea was involuntary and his attorney's conduct constituted ineffective assistance of counsel. An essential prerequisite to successfully attack a guilty plea on ineffective assistance grounds is the appellant must show the alleged deficiencies caused his plea to be unknowing and involuntary. Rodriguez v. State, 899 S.W.2d 658, 666 (Tex.Crim.App.1995).
This case involves the appeal of a "Motion for New Trial; Alternatively, Motion to Withdraw Plea of Guilty." A motion to withdraw plea is functionally indistinguishable from a motion for new trial. See State v. Evans, 843 S.W.2d 576, 578 (Tex.Crim. App.1992). The granting of a motion for new trial on the ground of ineffective assistance of counsel is a matter within the trial court's discretion. Messer v. State, 757 S.W.2d 820, 827 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd); Jiminez v. State, 727 S.W.2d 327, 328 (Tex.App.-Houston [1st Dist.] 1987, no pet.). In considering a motion for new trial, the trial court possesses broad discretion in considering the credibility of the witnesses and in weighing the evidence to determine whether a different result would occur upon retrial. Messer, 757 S.W.2d at 827. The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was uncontradicted. Id. at 828.
The appellant signed plea papers at the original plea hearing that indicated he understood the consequences of his plea after consulting with his trial attorney, and he entered his plea knowingly and voluntarily. The plea papers also show the appellant's trial counsel and the trial court both verified the appellant entered his plea voluntarily and knowingly after having fully discussed the plea and its consequences with his attorney. A defendant's attestation of voluntariness at the original plea hearing imposes a heavy burden on the defendant at a later hearing to show a lack of voluntariness. Ford v. State, 845 S.W.2d 315, 316 (Tex.App.-Houston [1st Dist.] 1992, no pet.); Thornton v. State, 734 S.W.2d 112, 113 (Tex.App.-Houston [1st Dist.] 1987, pet. ref'd). In determining the voluntariness of the plea, we consider the entire record. Williams v. State, 522 S.W.2d 483, 485 (Tex.Crim.App.1975); Ford, 845 S.W.2d at 316. There is a presumption of regularity of the judgment and the proceedings absent a showing to the contrary, and the burden is on the defendant to overcome this presumption. Ex parte Wilson, 716 S.W.2d 953, 956 (Tex.Crim.App.1986); Ford, 845 S.W.2d at 316.

*950 Misinformation
The appellant contends his plea was involuntary because his trial attorney gave him false information that induced him to enter a guilty plea. The appellant waived his right to have a court reporter record the plea proceedings. Therefore, the only evidence regarding his claim consists of the written plea papers he signed when he entered his plea and the testimony of the appellant and his trial attorney from the hearing on the appellant's motion for new trial.
The appellant testified at the hearing on his motion for new trial that Tom Zakes, his attorney, advised the appellant he could withdraw his plea of guilty if he received a sentence he did not like. Specifically, the appellant testified:
Q. Did you plead guilty or did you not plead guilty?
A. At my lawyer's instruction, I pled guilty.
Q. Did your attorney advise you to plead guilty?
A. Yes sir.
....
Q. Did your attorney tell you what would happen if you consequently got a result that you did not like at the hearing?
A. Yes, sir he did.
Q. Well, what did he tell you?
A. He led me to believe that if that was the case that we could withdraw my plea of guilty.
Q. Do you remember exactly how he put it?
A. That was basically it.
Q. Now when you gowhen you say "withdraw your plea," what did you understand that to mean?
A. I understood that to mean that we would just go back to where we were before we filed for the PSI background investigation.
Q. Did youif you had gotten a result that you didn't like, would you have attempted to withdraw your plea?
A. I tried to that day, sir.
Q. Now, did you do that?
A. As the deputy was escorting me out of the judge's office, I turned around and told Tom Zakes to withdraw my plea of guilty.
Q. What did Mr. Zakes tell you?
A. He said I can't do that.
Q. And what did you say about that?
A. I said, "What do you mean I can't do that?"
Q. Did Mr. Zakes and you discuss that further?
A. He said once again that he couldn't do that, that he never told me that, and then the deputy intervened and told me to shut up and quit talking to him.
....
Q. Had you known that you were not able to withdraw your pleathat that was not possiblewould you have insisted on a jury trial?
A. Yes, sir, I would have.
The appellant's trial attorney testified he did not coerce the appellant to enter a plea of guilty, and he did not tell the appellant withdrawal of the plea was possible if the appellant did not like the sentence. Specifically, the appellant's attorney testified:
Q. Did you coerce Mr. Dusenberry to enter a plea of guilty?
A. In my opinion I did not.
Q. You're saying your opinion. Can you tell us what you told him?
A. I told him that this was a very serious allegation, thatwhat the charges involved and what the offense report reflected was a very long chain of events of repeated sexual abuse, that there was physical evidence corroborating this, that his own admission that he had said that he washad engaged in this type of behavior on at least *951 one occasion would not help us in formulating a defense of possibly the child had just fabricated them.
I felt that this issuethat the fact issues in trialand I advised him of this: That the case was basically going to be decided in terms of punishment. That was the real issue in this case. It was what was the punishment going to be, I felt.
And I advised him that by entering a plea of guilty, it would show the finder of facteither the jury or the judgethat he was repentant for what he had done, that he felt sorry for what he had done.
He was ready and willing to step up to the plate and take full responsibility for his actions, and that would be taken as a mitigating factor; not putting his daughter through the trauma of testimony would be something that the finder of fact would appreciate in terms of possible leniency at trial.
I advised him as to that. I do not feel that there was any coercion on my part.
....
Q. Did you tell him that if he pled to the Judge that if he did not like the sentence that the Judge handed down that he could withdraw his plea at that time?
A. No, ma'am.
Q. Do you remember any conversations where you might have hinted at that or anything like that?
A. I believe he may have asked me about that. I know afterwards he told me that he understood that to be the case.
....
I believe that he asked me that. I told him that there were certain courts where that is the policy. There's the one misdemeanor court I'm aware of that the Judge will letyou know, going in, if you plead without a rec and don't like what he says, he's going to push you to withdraw it and to trial immediately.
Q. When did you have that discussion with him? Before the plea or afterward?
A. Yeah. That would have been at the jail before it happened. And I don't recall anyif I talked to him about that specific matter on the day that he pled.
Q. Well, do you recall telling him that he could withdraw his plea if he did not like the sentence that Judge Shipley handed down?
A. I've never told a client that they could withdraw a plea if they went in on a PSI or without a rec.
Q. So you've never told a client that? That would include Mr. Dusenberry?
A. Correct.
The appellant's version of the events leading up to the entry of his guilty plea conflicts with the testimony of his trial attorney. The appellant testified his attorney misinformed him, and his attorney testified he did not. The trial court, as the fact finder, was entitled to believe the attorney and implicitly did so when it denied the appellant's motion for new trial. Messer, 757 S.W.2d at 827. The record supports a finding that the attorney did not give the appellant incorrect advice, and his plea was therefore voluntary.[1]

Admonishments
The appellant also contends he produced other evidence at the hearing that his plea was involuntary. The appellant testified at the hearing that his trial attorney, without adequate explanation, rushed him into signing preprinted admonishment forms that were silent about whether the appellant had a right to withdraw a guilty plea that was entered without an agreed recommendation. The appellant concedes these forms did not state a defendant could withdraw a plea of guilty that, as in this case, was entered without *952 an agreed recommendation from the prosecution.[2] Therefore, these forms could not have induced the appellant into erroneously believing he could withdraw his plea in this case if he did not like the sentence imposed by the trial court. Further, the record contains evidence the appellant's trial counsel adequately reviewed the admonishments with him and explained the consequences of the plea without a recommendation. Specifically, counsel testified:
Q. Did you advise Mr. Dusenberry to plead guilty?
A. I told him it was up to him.
Q. Did you advise him it was in his interest if he entered a plea of guilty?
A. Told him what the range of punishment was, what the possibilities were.... And I don't think I've ever told a client it was in their interest to enter a plea of guilty or not guilty.
Q. Are you saying you did or did not in this case with Mr. Dusenberry recommend he enter a plea of guilty?
A. Told him it was up to him.
....
Q. Do you recall that day, the day that he pled guilty?
A. I recall the event.
....
Q. Do you recall if you were rushed that day or if you hadhad adequate time to spend with him?
A. I felt that I had adequate time to speak with Mr. Dusenberry. I asked him if he needed to take more time to discuss the matters, if there were anythingany things that he did not understand that he wanted to talk about in a more private setting.
....
Q. Let's talk for a minute about the paperwork involved in taking a plea of guilty. Do you recall the admonishments that went along with the plea form?
A. That's a several page document stapled together, which the accused is to initial, as he understands, each paragraph that we're discussing.
Q. Did you speak with him about each paragraph or did you just leave it with him?
A. I believe I spoke with him about each paragraph.
In cases where I might have a client that is illiterate, I usually will not verbatim read the papers out loud to that person. I cannot tell you definitely that I discussed every single paragraph. I think that there may have been an instance where I left paperwork with him, went into the courtroom to take care of other matters and then came back into the area where the prisoners were and asked him if he had additional questions.
Q. Did you tell him to read the admonishments?
A. Yes.
Q. Did you tell him to sign each admonishment or initial each admonishment after he read that admonishment?
A. I told him he needed to initial those; that the initials indicated he understood or, as appropriate, agreed with what was stated in each specific paragraph.
We hold the trial court did not err in denying the appellant's motion for new trial because the record supports a finding the appellant's guilty plea was voluntary.
We overrule points of error one through three.
We affirm the judgment of the trial court.
O'CONNOR, J., dissents.
*953 O'CONNOR, Justice, dissenting.
I dissent. The majority in this case holds the record supports a finding that the appellant's plea was voluntary. I disagree. Therefore, I would reverse and remand.

Involuntary Plea
The appellant signed a six-page form before his plea hearing that contained waivers of his rights, that stated he understood the consequences of his plea, that he consulted with his trial attorney, and he entered his plea knowingly and voluntarily. The forms also show the appellant's trial counsel and the trial court both verified the appellant entered his plea voluntarily and knowingly after having fully discussed the plea and its consequences with his attorney.
When a defendant complains his lawyer did not explain the waivers on the form for the plea of guilty, the defendant's written attestation of voluntariness on the form itself should not impose any heavier burden on the appellant than is his already. If the statements on the form (which the defendant claims was not explained) state the lawyer did explain them, this Court could never review the issue on appeal. Thus, the language in the form cannot preclude review of whether the statements in the form were explained to the defendant. In determining the voluntariness of the plea, this Court must consider the entire record. Williams v. State, 522 S.W.2d 483, 485 (Tex.Crim.App. 1975); Ford v. State, 845 S.W.2d 315, 316 (Tex.App.-Houston [1st Dist.] 1992, no pet.).
The appellant contends his plea was involuntary because his trial attorney gave him false information that induced him to enter a guilty plea. The attorney for the appellant waived the appellant's right to have a court reporter record the plea proceedings.[1] Therefore, the only evidence regarding the appellant's claim consists of the written plea papers the appellant signed when he entered his plea and the testimony of the appellant and his trial attorney at the hearing on the appellant's motion for new trial.
The trial lawyer testified he told the appellant some courts permit defendants to withdraw their plea after the announcement of punishment. The attorney did not explain why he would have had such a conversation with the appellant if it was not applicable to the appellant's case. The trial counsel admitted the appellant thought he could withdraw his plea. He did not suggest the appellant concocted this story after the fact.
The form entitled "admonishment" is not the correct form for a defendant who pleads guilty without a recommendation. It is the form used when a defendant pleads guilty with a recommendation by the prosecutor. Thus, the references in the form regarding the plea bargain agreement, and whether the judge will follow it, and that the judge will permit the defendant to withdraw the plea, contain information that is inappropriate, and worse, confusing.
The appellant also contends he produced other evidence at the hearing that his plea was involuntary. The appellant testified his trial attorney did not explain the waivers, and rushed him into signing the six pages of forms and the two-page waiver of a conflict of interest.[2] The admonishment forms were silent whether the appellant had a right to withdraw a naked plea of guilty. The appellant concedes these forms did not state a defendant could withdraw a plea of guilty that, as in this case, was entered without an agreed recommendation from the prosecution.[3]
*954 The record contains evidence the appellant's trial counsel did not adequately review the admonishments with him. The appellant testified his counsel was always in a hurry. On the day the appellant signed the papers to plead guilty, he was taken out of the holding cell and given ten minutes to talk to his lawyer and sign the papers. In ten minutes, the appellant signed the two-page waiver of a conflict of interest, and the six-page forms for the plea of guilty.[4]
The admonishment form contains 14 numbered paragraphs for the defendant to read, understand, and initial. Another form contains 16 numbered paragraphs for the defendant to read, understand, and sign. I would hold, based on this evidence, the appellant was misled, perhaps inadvertently, into believing he could withdraw his plea after sentencing. The problem was created by the trial lawyer's failure to explain the terms of the waiver to the appellant and the confusion generated by the inappropriate forms used for the plea of guilty. Because the appellant misunderstood the nature of the plea, his plea was not voluntary.
I would sustain points of error one and three.

Ineffective Assistance of Counsel
In point of error two, the appellant contends he was denied effective assistance of counsel.
To show counsel was ineffective, the defendant must demonstrate his performance fell below an objective standard of reasonableness. Rodriguez v. State, 899 S.W.2d 658, 664 (Tex.Crim.App.1995); Garner v. State, 864 S.W.2d 92, 100 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). For a defendant to successfully attack a guilty plea on grounds of ineffective assistance of counsel, the defendant must show the deficiencies rendered his plea involuntary and unknowing. Rodriguez 899 S.W.2d at 666. The burden of proving ineffectiveness of counsel rests upon the defendant by the preponderance of the evidence. Rodriguez 899 S.W.2d at 665; Marlow v. State, 886 S.W.2d 314, 316 (Tex.App.-Houston [1st Dist.] 1994, no pet.).
At the motion for new trial hearing, the trial attorney admitted he did not explain each of the waivers on the "admonishment" form to the appellant. The trial counsel testified:
I cannot tell you definitely that I discussed every single paragraph. I think that there may be an instance where I left the paperwork with him, went into the courtroom to take care of other matters and then came back into the area where the prisoners were and asked him if he had additional questions.
There is no evidence in this record that contradicts the trial counsel's testimony he did not explain each paragraph to the appellant. Thus, the attorney admitted he did not explain the significance of the waivers to the appellant.
We should connect this lapse with the lawyer's own testimony, that he told the appellant about courts that permit defendants to withdraw their plea after the announcement of punishment. It is easy to see how the appellant could have been misled. His attorney told him some courts permit the withdrawal of the plea after punishment, the forms the appellant signed discussed withdrawal of the plea of guilty, his lawyer told him the case only involved punishment and recommended he waive the trial, his lawyer did not explain the forms, and he had ten minutes to sign the six pages for the plea of guilty and two pages for the waiver of conflict of interests.
*955 I would hold the appellant proved by a preponderance of the evidence he did not receive effective assistance of counsel in entering his plea of guilty.
I would reverse the judgment of the trial court and remand the cause for further proceedings.
NOTES
[1] The dissent states trial counsel admitted knowing the appellant thought he could withdraw his plea. However, counsel testified he did not learn that the appellant thought he could withdraw his plea until after the appellant had already pleaded guilty.
[2] The forms stated: "if there is any plea bargaining agreement between the State and you, the Court will inform you whether it will follow such agreement before making any finding on your plea." This admonishment was in compliance with article 26.13(a)(2) of the Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 26.13(a)(2) (1989). However, it did not apply to the present case because the appellant entered his plea without a plea bargain or an agreed recommendation from the prosecutor.
[1] There is no excuse for the trial attorney to waive the recording of the plea agreement. It does not cost anything for the court reporter to record the proceedings. The only reason a lawyer in a criminal trial might waive the record is to obscure the proceedings for later review.
[2] Zakes represented the wife on charges of failure to report child abuse.
[3] However, the forms did provide as follows: "if there is any plea bargaining agreement between the State and you, the Court will inform you whether it will follow such agreement before making any finding on your plea." This admonishment was in compliance with article 26.13(a)(2) of the Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 26.13(a)(2) (1989). However, it did not apply to this case because the appellant entered his plea without a plea bargain or an agreed recommendation from the prosecutor.
[4] The trial attorney's testimony, while vague, did seem to contradict the appellant on this point. The attorney said he might have left the papers with the appellant. The attorney admitted he did not explain the papers to him.