Charles Clifford **MURPHY**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 01–82–0439–CR, 01–82–0553–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 15, 1983.

Randy Schaffer, Houston, for appellant.

J. Harvey Hudson, Houston, for appellee.

Before JACK SMITH, BULLOCK and COHEN, JJ.

OPINION

COHEN, Justice.

The appellant pleaded no contest to five counts of robbery and two counts of aggravated robbery within two indictments and, after a pre-sentence investigation and a contested punishment hearing, was sentenced by the court to imprisonment for forty years on each aggravated robbery count and twenty years on each robbery count.

We must reverse the judgments of conviction on all counts because the pleas of no contest were involuntary in that they were entered as a result of ineffective legal assistance rendered to the appellant by his retained trial counsel.

In an unpublished order of March 24, 1983, a panel of this court abated the appeal and remanded the case to the district court to hold a hearing on the appellant's objections to the record. See Tex.Code Crim. Ann. art. 40.09, § 7 (Vernon 1982). *Guillory v. State,* 557 S.W.2d 118 (Tex.Cr.App. 1977); *Guillory v. State,* 638 S.W.2d 73 (Tex.App.—Houston [1st Dist.] 1982); *Washington v. State,* 559 S.W.2d 825 (Tex.

Cr.App.1977). The district court was ordered to hold a hearing and to make findings of fact and conclusions of law regarding whether the court or the appellant's trial attorney had represented that the sentence would not exceed twenty-five years, and to determine whether information had been given ex-parte to the trial court in an attempt to influence its decision on punishment.

The trial court made the following findings of fact and conclusions of law:

1. Defendant was indicted on six counts of robbery in Cause No. 336,-177 and three counts of aggravated robbery in Cause No. 336,178.

2. William E. Satterwhite, Jr. was retained to represent the defendant on these charges.

3. The State was represented by Thomas Henderson, an Assistant District Attorney.

4. Henderson offered to recommend thirty years in exchange for an agreed plea.

5. The defendant rejected this offer contending that he was innocent.

6. During plea negotiations conducted during the first few settings on the docket no progress was made.

7. An in-chambers conference with Judge Hearn was sought to try to resolve the impasse.

8. At this conference, Henderson outlined some eleven pending cases against the defendant, in addition to twenty-nine other cases which had been cleared, upon which his recommendation of thirty years was based.

9. . . .

10. Satterwhite sought a commitment from Judge Hearn of a "cap" of twenty years if the defendant entered a plea of guilty.

11. Judge Hearn refused to commit himself to any punishment stating it was against his policy.

12. Nevertheless, Satterwhite got the impression that Judge Hearn thought the case was worth twenty to twenty-five years.

13. Satterwhite thereafter tried to convince the defendant to enter a plea on the basis that the court thought the case was worth twenty to twenty-five years which was preferable to the life sentence Satterwhite expected would be assessed if the cases were tried.

14. Jack Carlyle, a cousin of the defendant, contacted an attorney in Fort Worth for an independent evaluation of whether the defendant should accept the proposal for a twenty to twenty-five year prison sentence. The attorney advised Mr. Carlyle that the defendant should accept it.

15. Mr. Satterwhite arranged for Jack Carlyle and Daphine Ducas, the defendant's aunt, to meet the defendant at the Harris County Detention Center in Humble, Texas, to try to persuade him to accept this proposal. On December 21, 1981, Mr. Carlyle and Ms. Ducas met with the defendant in an effort to persuade him to accept the proposal. He still declined to do so.

16. The case was set for trial on February 1, 1982. Mr. Satterwhite thought that the State was going to try only the first count of the aggravated robbery indictment. Accordingly, he had prepared to try only that count.

17. On the day of trial, the prosecutor told the judge in annex court that he intended to try all three counts of the aggravated robbery indictment. *Mr. Satterwhite erroneously believed that he had already obtained a severance of counts on that indictment. Mr. Satterwhite was not prepared to try the second and third counts of the indictment, and he so advised the court, the prosecutor and the defendant.* [all emphasis here and below supplied by this court]

18. Judge Van Stovall recessed the proceedings to enable the parties to resolve the issue of whether Judge Charles Hearn had previously granted a severance. Mr. Satterwhite and Mr. Henderson consulted with Judge Hearn. They determined that there had been no motion for severance filed nor had any severance been granted.

19. On February 2, 1982, Mr. Satterwhite filed a motion for severance of counts on the aggravated robbery indictment. The State opposed the motion on the basis that it was not timely filed. Judge Stovall had an in-chambers conference with both counsel, during which he either overruled the motion for severance or indicated to counsel that he would overrule it when formally presented in open court.

20. Mr. Satterwhite communicated to the defendant that a severance had been denied and that the defendant would have to go to trial on all three counts of the aggravated robbery indictment. *Mr. Satterwhite* explained that he had alibi witnesses present on only the first count, as he *had not consulted with the defendant on the second and third counts.* Mr. Satterwhite further advised the defendant that if all three counts were tried together to a jury, the defendant could expect to receive a life sentence upon conviction.

21. Satterwhite advised the defendant that his best course was to enter a plea of no contest and to obtain a presentence investigation which would be handled by Judge Hearn because Satterwhite felt that the twenty to twenty-five years was still available.

22. Mr. Satterwhite explained to the defendant that during the plea proceeding the trial court was obligated to admonish him of the full range of punishment attached to the offense, including the possible maximum term of life imprisonment. Judge Stovall admonished the defendant accordingly at the time of the plea.

23. *The primary reason that the defendant changed his plea from not guilty to no contest on the day of trial was because Mr. Satterwhite told him that the motion for severance had been denied, that he would have to try all three cases together (two of which he was unprepared to try), that a jury hearing evidence of three aggravated robberies would be likely to assess a term of life imprisonment, and that Judge Hearn had agreed to assess punishment at no more than twenty-five years.*

24. Pleas of no contest were entered on February 2, 1982.

25. After the plea was taken Henderson met with a group of some nineteen complaining witnesses who were present to testify against the defendant and who were indignant because they had been deprived of having their stories heard since the case had not gone to trial.

26. They asked Henderson how they could be heard and he explained that they could write letters to the court which would be considered in the pre-sentence investigation.

27. At least four of the complainants did write letters to the court during the second week of February, 1982, and they were filed in the clerk's records of Cause No. 336,177 on February 19, 1982.

28. The complainants wrote these letters to the court ex-parte with the intent of influencing its sentencing decision.

29. After a pre-sentence investigation was completed a punishment hearing was held on May 27, and 28, 1982.

30. The pre-sentence investigation contained summaries of interviews with numerous complainants as well as defense character witnesses and the recommendation of the probation officer who conducted it was that the

defendant should be confined for a maximum term of years.

31. Numerous defense witnesses were presented at the punishment hearing including the defendant who neither expressed remorse nor even accepted any responsibility for the nine robberies.

32. Henderson recommended forty years punishment and the trial court followed the recommendation on the basis of the evidence at the punishment hearing.

33. The court sentenced the defendant to forty years in prison on the aggravated robberies and twenty years on the robberies. *This was five to twenty years more than Mr. Satterwhite had told the defendant he would receive, based on the trial court's alleged representations to him.*

34. At the sentencing hearing, the defendant complained to the court at the first available opportunity that his sentence was not in accordance with the "agreement" between the court and Mr. Satterwhite. Because a visiting judge was presiding instead of Judge Hearn, the matter was not resolved at that time.

The court also made the following conclusions of law:

1. No representation was made by the trial court to Satterwhite that it would assess a certain punishment; to the contrary the trial court refused to commit itself to a particular punishment.

2. Representations were made by Satterwhite to the defendant and family members of the defendant that the trial court thought the case was worth twenty to twenty-five years and numerous attempts were made to persuade the defendant to enter a plea rather than try the cases and risk a life sentence. Nevertheless, it was the reality of having to go to trial and the imminency of the life sentence which had been predicted all along if the cases were tried which caused the defendant to enter his pleas of no contest.

3. The letter written by the complainants were essentially cumulative to interviews contained in the pre-sentence investigation report and had no effect on the assessment of forty years which is based on the facts of the punishment hearing including the probation officer's recommendation of the maximum term and the defendant's lack of remorse and refusal to acknowledge responsibility for his crimes.

4. The plea was voluntarily entered even though the defendant hoped that he would get a lesser punishment than that which was ultimately assessed.

5. Satterwhite's representation, while certainly no model of the ideal manner of representation, was nevertheless reasonably effective despite his mistaken perception of what he thought the court would assess. The result was still considerably less than that anticipated if the cases were tried and in view of the difficulty in dealing with the defendant who refused to admit his guilt in the face of overwhelming evidence on multiple charges, Satterwhite did the best he could with the hand he was dealt to play.

6. There was no breach of a plea bargain by Henderson since the offer of thirty years was in return for an agreed plea which was never culminated.

The State made no objections to the trial court's findings of fact or conclusions of law and concedes that the findings of fact are supported by the evidence.

The appellant argues that the pleas of no contest were not knowingly and voluntarily entered because: 1) the appellant relied upon inaccurate advice of his counsel that punishment would not exceed twenty to twenty-five years; 2) neither the trial court

nor defense counsel advised the appellant, who had applied for probation, that he was ineligible for probation as a matter of law; and 3) the pleas were induced by the erroneous denial of appellant's motion for severance of the counts of the aggravated robbery indictment.

This record contains evidence which is not only ample, but uncontradicted in support of vitally important findings of fact, including numbers seventeen, twenty-three and thirty-three. It is undisputed that Mr. Satterwhite was unprepared to try the second and third counts of the indictment, that he incorrectly advised the appellant that Judge Hearn had agreed to assess punishment at no more than twenty-five years, and that these two factors were the primary reasons causing the appellant to change his plea from not guilty to no contest on the day of trial.

The indictment in 336,178 consisted of three counts alleging aggravated robbery which were joined pursuant to § 3.01 and § 3.02(a) Tex.Penal Code Ann. (1974). On the day of the no-contest plea, Mr. Satterwhite filed a written motion for severance pursuant to § 3.04, Tex.Penal Code Ann., which provides, "Whenever two or more offenses have been consolidated or joined for trial under § 3.02 of this Code, the defendant shall have a right to a severance of the offenses." The statute is mandatory and it is error to refuse such motion, even if orally made on the day of trial. *Rice v. State,* 646 S.W.2d 633 (Tex.App.— Houston [1st Dist.] 1983, PDRR); *Overton v. State,* 552 S.W.2d 849 (Tex.Cr.App.1977); *Jordan v. State,* 552 S.W.2d 478 (Tex.Cr. App.1977); *Waythe v. State,* 533 S.W.2d 802 (Tex.Cr.App.1976). Although Satterwhite filed a timely written motion for severance citing Penal Code § 3.04, he never obtained an oral or written order or docket entry denying it. Nothing in the record reflects a ruling on the motion. Even if the motion had been denied on the record, appellate review of the erroneous denial would be precluded because a plea of no contest waives such errors. *Prochaska v. State,* 587 S.W.2d 726 (Tex.Cr.App.1979). Appellant's

counsel could have preserved the error by having the severance motion overruled on the record and by then pleading not guilty. This would have required a reversal, thus securing to the appellant the important right to be tried on one offense at a time. Instead, the cases remained joined for trial and the valuable, mandatory right to a severance was waived. This required the appellant to choose between going to trial on three first-degree felonies with an unprepared lawyer, or pleading guilty and waiving his right to a jury trial on one offense at a time. The decision to plead no-contest under these circumstances cannot be characterized as voluntary. Ground of error three is sustained.

Mr. Satterwhite filed a motion for probation when the appellant pleaded no contest to aggravated robbery, despite the fact that the appellant was ineligible by statute to receive probation from the court for that offense. Tex.Code Crim.Pro.Ann. art. 42.- 12, § 3f(a)(1)(E) (1979); *State ex rel. Vance v. Hatten,* 600 S.W.2d 828, 830 (Tex.Cr.App. 1980). The State argues that the appellant was still eligible for probation from the court if the court chose to defer adjudication of guilt, as authorized by Code of Criminal Procedure art. 42.12, § 3d. The court did not defer adjudication, however; it entered an adjudication of guilt and found appellant guilty of all counts at the conclusion of his plea of no-contest on February 2, 1982. Nevertheless, Mr. Satterwhite argued for deferred adjudication at the punishment hearing of May 28, 1982. The record thus is clear that Mr. Satterwhite at all times thought that the court could grant probation and communicated that fact to the appellant. The court never admonished the appellant that he was not eligible for probation.

In *Ramirez v. State,* 655 S.W.2d 319 (Tex.App.—Corpus Christi 1983, no pet.) the Court of Appeals reversed a conviction because the trial court not only failed to admonish an aggravated robbery defendant who had pleaded guilty and filed a motion for probation that he was ineligible for probation, but actually told the defendant

he could receive probation. The instant case is distinguishable from *Ramirez* because the court never told the appellant that he could receive probation. The Court of Criminal Appeals has not yet held that a judge must routinely admonish an ineligible probation applicant of his ineligibility. Nevertheless, we believe that the better practice is for the trial court to admonish an applicant of his ineligibility for probation when it becomes apparent to the court that he incorrectly believes himself to be eligible. Such a misunderstanding by a defendant, apparent in the record, should alert a trial judge to the possibility that the defendant does not understand the consequences of his plea because he misapprehends the range of punishment. The American Bar Association *Standards for Criminal Justice,* Pleas of Guilty, Standard 14–1.-4(a)(ii) (2d Edition 1982), recommends that a judge determine that the defendant understands any special circumstances affecting probation. Courts in other states have reversed convictions for failure to admonish of ineligibility for probation. *Meyer v. State,* 95 Nev. 885, 603 P.2d 1066 (1979); *People v. Rogers,* 412 Mich. 669, 316 N.W.2d 701 (1982); *Wells v. State,* 396 A.2d 161 (Del.1978); *Munich v. U.S.,* 337 F.2d 356 (9th Cir.1964); see also *Wood v. Morris,* 87 Wash.2d 501, 554 P.2d 1032 (1976); *O'Tuel v. Osborne,* 706 F.2d 498 (4th Cir.1983); *U.S. v. Wolak,* 510 F.2d 164 (6th Cir.1975); *Gates v. U.S.,* 515 F.2d 73 (7th Cir.1975); *U.S. v. Richardson,* 483 F.2d 516 (8th Cir.1973).

In several recent cases the Court of Criminal Appeals has reversed convictions because of inaccurate advice by a defense attorney similar to Mr. Satterwhite's advice that the appellant was eligible for probation. In *Ex parte Young,* 644 S.W.2d 3 (Tex.Cr.App.1983), the attorney incorrectly informed his client that he would be eligible for parole in three years on a fifteen year sentence for aggravated robbery, when the client would be eligible for parole only after five years. In *McGuire v. State,* 617 S.W.2d 259 (Tex.Cr.App.1981), the attorney incorrectly told the client that he could withdraw his guilty plea if the court gave great-

er punishment than the State recommended. In *Ex parte Burns,* 601 S.W.2d 370 (Tex.Cr.App.1980), the attorney advised his client to plead guilty for a life sentence in order to avoid a death sentence, despite the fact that Texas had no valid capital punishment statute in effect at the time of the offense. These cases control the disposition of the instant case. We hold that the pleas were involuntary because of the defense attorney's inaccurate advice that the appellant was eligible for probation. Ground of error two is sustained.

The appellant's remaining ground of error is that the no-contest pleas were involuntary because they were induced by counsel's statements that Judge Hearn had agreed to a sentence of twenty-five years or less. We sustain this ground of error for the reasons stated. See *Ex parte Young,* 644 S.W.2d 3; *McGuire v. State,* 617 S.W.2d 259; *Ex parte Burns,* 601 S.W.2d 370, all *supra.*

The judgments are reversed and the causes are remanded for a new trial.