COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL HECTOR MARTINEZ, | § | No. 08-06-00335-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 112th District Court |
| THE STATE OF TEXAS, | § | |
| | | of Pecos County, Texas |
| Appellee. | § | |
| | | (TC# P-2609-112-CR) |
| | § | |

**O P I N I O N**

This is an appeal from convictions on two counts of aggravated assault with a deadly weapon. Appellant pleaded guilty to the jury and the jury assessed punishment at ten years' imprisonment on the first count, and ten years' community supervision on the second count. We affirm.

**I. SUMMARY OF THE EVIDENCE**

On the evening of August 27, 2005, Florinda Fierro, Lucia Martinez, and Dion Chavez went to an event called Harvest Fest in Fort Stockton, Texas. The three then went to Lucia Martinez's house at approximately ten or eleven p.m. They saw Appellant's car parked by the house. He was separated from Lucia Martinez at the time. Lucia Martinez went into the house. After about thirty seconds, she ran screaming from the house; Appellant was following with a knife. She jumped into the back seat of Fierro's car. Fierro's window was open, and Appellant stabbed her in the arm. Prior to going to engage Chavez, who had exited the car, Appellant tapped on the car window with the knife and told Fierro that he would be back. Chavez tried to lead Appellant away from the vehicle, but Appellant told Chavez he would be back for him, and he again turned towards the car. Chavez

yelled at Fierro to drive off. As she started to drive away, the police arrived.

When Officer Enrique Irigoyen of the Fort Stockton Police Department arrived, he saw Appellant standing next to a small pickup truck with his arms behind his back. Chavez warned Officer Irigoyen that Appellant was armed with a knife. Another officer arrived, and they both arrested Appellant. Upon further investigation, Officer Irigoyen found a twelve-inch-long knife on the bumper of the pickup truck near where Appellant had been standing.

## II. DISCUSSION

### A. Issue No. One

In Issue No. One, Appellant contends that his trial counsel did not provide effective assistance of counsel, due to his failure to exercise a challenge for cause, request additional peremptory challenges, or further question a member of the venire panel concerning the member's ability to speak English.

Successful claims of ineffective assistance of counsel must first demonstrate that counsel was not functioning as counsel guaranteed by the Sixth Amendment in providing reasonably effective assistance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The second prong of this test requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, such that there arises a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. Reasonable probability is a likelihood sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S. Ct. at 2068. Texas adopted the *Strickland* test in *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986), *cert. denied*, 480 U.S. 940 (1987); *see also McFarland v. State*, 845 S.W.2d 824, 842 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 963 (1993) (*overruled on other grounds by Mosley v. State*, 983 S.W.2d 249, 264 n.18 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999)).

The constitutional right to counsel does not guarantee errorless representation. In order to meet the constitutional standard, counsel must provide reasonably effective assistance. *Wilkerson*, 726 S.W.2d at 548. In reviewing ineffective-assistance assertions, the totality of representation is examined, as opposed to focusing upon isolated acts or omissions. Ineffective assistance of counsel cannot be established by isolating or separating out one portion of the trial counsel's performance for examination. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). In that regard, this Court, on review, will not engage in hindsighted comparisons of how other counsel, in particular, appellate counsel, might have tried the case. *See Wilkerson*, 726 S.W.2d at 548. A fair assessment of trial counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances at trial, and to evaluate the conduct from counsel's perspective at the time. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991).

We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. An appellant must overcome the presumption that, under the circumstances at trial, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 688-89, 104 S. Ct. at 2065; *Stafford*, 813 S.W.2d at 506. Ultimately, an appellant bears the burden of proving ineffective assistance by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Bradley v. State*, 960 S.W.2d 791, 804 (Tex. App.--El Paso 1997, pet. ref'd).

Any allegation of ineffectiveness must be firmly founded and affirmatively demonstrated in the record. *Thompson*, 9 S.W.3d at 813. In the majority of instances, an appellant cannot rebut the presumption of reasonable assistance, because the record on direct appeal is simply undeveloped and does not adequately reflect the alleged failings of trial counsel. *Id.* at 813-14. A silent record that provides no explanation for counsel's actions will not ordinarily overcome the strong presumption

of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). Any error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Id.* Indeed, an appellate court should not declare trial counsel ineffective without a record showing that counsel had some opportunity to explain himself, absent conduct "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)).

In the present case, while a motion for new trial was filed, which alleged generally that the verdict was contrary to the law and the evidence, no hearing was held on the motion. The record is silent as to trial counsel's explanation for his actions. Accordingly, Appellant has failed to overcome the presumption of reasonable assistance. *See Rylander*, 101 S.W.3d at 110-11.[1]

Appellant asserts there are a number of instances in the record which demonstrate that trial counsel was ineffective in allowing venireman Senobio Aranda to become a member of the jury. During the voir dire proceeding, the court asked all sole proprietors of businesses to approach the bench, if their businesses would have to close if they served on the jury. Veniremen Senobio Aranda and Gustavo Benavente approached, and the following exchange occurred:

COURT:          All right. What's your name?

VENIREPERSON:     Senobio Aranda.

---

[1] Appellant has supplemented the record with an affidavit stating that he was not advised by trial counsel of a certain matter prior to pleading guilty. Also, the State has attached an affidavit from Appellant's trial counsel which explains various matters that occurred during his representation of Appellant. Neither affidavit was introduced at trial. The appellate record cannot be supplemented with evidence not developed during the proceedings surrounding the defendant's trial. The proper avenue for introducing evidence not contained in the trial record is a hearing pursuant to a motion for new trial or an application for writ of habeas corpus. The supplementation rules cannot be used to create a new record. *Ramirez v. State*, 104 S.W.3d 549, 551 n.9 (Tex. Crim. App. 2003). Further, we cannot consider an attachment to a brief that is not part of the appellate record. *See* TEX. R. APP. P. 34.1; *James v. State*, 997 S.W.2d 898, 901 n.5 (Tex. App.--Beaumont 1999, no pet.). Accordingly, we have not considered either of the affidavits in our disposition of this appeal.

COURT:       You got that?  Can you find his name?  What's your situation, sir?

VENIREPERSON:    I don't speak too much good English.

COURT:       Well, you're doing good.  Stay with us.  Why don't you stay with us?
             You stay with us.  All right.  I appreciate it.  Thank  you.  And your
             name?

VENIREPERSON:    Gustavo Benavente.

COURT:       What is your situation?

VENIREPERSON:    Don't speak English.

COURT:       You're doing good.  Why don't you stay with us?  The lawyers will
             talk to you some more about it, but stay with us for awhile.  Okay?
             All right.  You stay with us.  All right.  Next?

Later, prior to the final selection of the jury, venireman Benavente again approached the

bench, and the following occurred:

COURT:       Mr. Benavente?

VENIREPERSON:    Yes?

COURT:       All right.  Are you from San Angelo?

VENIREPERSON:    I don't understand English.

After this exchange, Benavente was excused upon the mutual agreement of Appellant's trial

counsel and the prosecutor.  Senobio Aranda was selected for the jury.

During the State's portion of the voir dire proceeding, the prosecutor stated that there were

four theories of punishment:  deterrence; protection; rehabilitation; and retribution.  The prosecutor

then asked members of the panel to which theory they subscribed.  As depicted in the record, some

members of the panel stated the word for the theory, others stated the word "number" before the

Arabic numeral, and some just stated the Arabic numeral.  When Senobio Aranda was questioned,

he stated, "Number 2." Appellant suggests that Aranda exhibited no real signs of understanding the English language, because he responded in English only after he had just heard some twelve other prospective jurors respond to the question with merely a number answer.

Appellant also maintains that Aranda's tenuous grasp of the English language was demonstrated, given his response to the prosecutor's question to the veniremembers concerning their favorite television show and what they considered to be the most important thing that children must be taught. Aranda responded:

STATE:      Mr. Aranda, do you have a favorite TV show?

VENIREPERSON:    Yeah. Old. Horse races and running.

STATE:      Okay. What's the most important thing we teach our children?

VENIREPERSON:    To be honest and respect.

Appellant suggests that it is highly likely that Aranda was merely taking cues from the answers of the other veneiremembers.

Appellant points to a final example of what he considers another indicator of Aranda's inability to speak English, which arose during the defense's portion of the voir dire examination. Appellant's trial counsel asked the veniremembers whether they could consider probation in assessing punishment. When Aranda was questioned, he nodded his head. Appellant contends that this response showed no signs of comprehension of English, because, prior to Aranda's questioning, at least ten members of the venire were posed the question, and they answered in a mere "yes" or "no" or simply nodded their heads.

Appellant asserts that the above-mentioned incidents show Aranda did not understand English at all, and that he had a propensity for mimicking his English-speaking counterparts on the venire. Appellant reasons that it was extremely likely that "Aranda remained in the dark for most

of the proceedings, was unable to decipher the jury charge, and simply capitulated by mimicking the conduct of the other jurors when rendering a verdict."

Appellant acknowledges that, absent a firm foundation in the record, a reviewing court cannot speculate as to why counsel acted in a certain manner with regard to trial strategy. However, Appellant contends that this record is adequate to demonstrate that there was no possible trial strategy that could sanction his trial counsel's failure to inquire further into Aranda's lack of ability to speak English or to seek additional peremptory jury strikes. Appellant reasons that the trial strategy was to obtain probation, and Aranda's inability to speak English worked against this strategy. We disagree.

Generally, with regard to decisions of whether to strike a venireperson for cause, an appellate court defers to the decision of the trial court, which was in a position to actually see and hear the veniremember in the context of the voir dire. *Emenhiser v. State*, 196 S.W.3d 915, 927-28 (Tex. App.--Fort Worth 2006, pet. ref'd). An appellate court will uphold a trial court's decision not to strike a juror for cause, unless there is no adequate basis in the record to support the ruling. *Vuong v. State*, 830 S.W.2d 929, 944 (Tex. Crim. App.), *cert. denied,* 506 U.S. 997 (1992). Like the trial court, an appellant's trial attorney is also in a position to determine whether to challenge the veniremember for cause. Appellate courts do not have the benefit of observing a veniremember's demeanor and tone of voice, which are important characteristics both sides analyze when making voir dire decisions. *See Mooney v. State*, 817 S.W.2d 693, 701 (Tex. Crim. App. 1991).

We find that Appellant's contention that the various cited examples show that Aranda could not speak English to the extent that he could not serve as a juror to be somewhat strained and speculative. Furthermore, the presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance applies to counsel's decisions regarding which veniremembers

to challenge or strike. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (trial counsel's failure to challenge impartial juror did not constitute ineffective assistance, because record did not indicate why counsel did not strike that veniremember). A critical component in determining whether counsel erred would be some indication of his client's perceptions and communications, if any, with counsel during the course of the voir dire proceeding. *See Delrio v. State*, 840 S.W.2d 443, 446-47 (Tex. Crim. App. 1992). We have no indication what, if any, interplay occurred between Appellant and his trial counsel. Accordingly, on the record before us, we find that Appellant has failed to meet his burden in demonstrating that he received ineffective assistance of counsel. Issue No. One is overruled.

## B. Issue No. Two

In Issue No. Two, Appellant asserts that his trial counsel provided ineffective assistance of counsel in that counsel failed to inform him that, if found guilty, he would have to serve half of his sentence incarcerated before becoming eligible for parole. Specifically, Appellant argues that, by not informing Appellant of his parole eligibility, Appellant's plea of guilty was not freely, knowingly, and voluntarily entered.

When a party challenges the voluntariness of a plea, entered upon the advice of counsel, contending that his counsel was ineffective, the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and, if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Ex Parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999). Again, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). To defeat this presumption, "'any allegation of ineffectiveness must be firmly founded

in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'" *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119 (1997)). When no specific reason is given for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 830, 833 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 813-14. In the case before us, as Appellant's affidavit is not properly before us, the record is simply bare concerning exactly what trial counsel advised, why he did so, and whether that had any effect on Appellant. Issue No. Two is overruled.

### C. Issue No. Three

In Issue No. Three, Appellant maintains that trial counsel's failure to inform him that, if found guilty, he would have to serve half of his sentence incarcerated before being eligible for parole caused Appellant's plea to be involuntary. At trial, Appellant pleaded guilty without a plea bargain, and he stated that his guilty plea was freely and voluntarily given. He was admonished as to the appropriate range of punishment and trial counsel indicated that he and Appellant had had lengthy discussions concerning the guilty plea and allowing the jury to assess punishment.

An involuntary guilty plea must be set aside. *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713 (1969); *Williams v. State*, 522 S.W.2d 483, 485 (Tex. Crim. App. 1975). To determine whether a plea is voluntary, we consider the record as a whole. *Williams,* 522 S.W.2d at 485. If counsel conveys erroneous information to a defendant, a plea of guilty based on that misinformation is involuntary. *Ex parte Griffin*, 679 S.W.2d 15, 17 (Tex. Crim. App. 1984); *McGuire v. State*, 617 S.W.2d 259, 261 (Tex. Crim. App. 1981). A defendant's claim that he was misinformed by counsel, standing alone, is not enough to render his plea involuntary. *Fimberg v. State*, 922 S.W.2d 205, 208 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd). In cases in which a

guilty plea has been held to have been involuntary, the record has contained confirmation by counsel of the misinformation or documents properly in evidence augmenting the defendant's testimony that reveal the misinformation and show its conveyance to the defendant. *See*, *e.g.*, *Griffin*, 679 S.W.2d at 15; *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980); *State v. Hartman*, 810 S.W.2d 22, 22 (Tex. App.--Beaumont 1991, no pet.); *Murphy v. State*, 663 S.W.2d 604, 610 (Tex. App.--Houston [1st Dist.] 1983, no pet.). As no such confirmation is properly before us, we find that Appellant has failed to establish that his guilty plea was involuntary. Issue No. Three is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.


KENNETH R. CARR, Justice

May 8, 2008

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)