NUMBER 13-09-00262-CR


NUMBER 13-09-00263-CR


 

COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


LINDA GARCIA A/K/A LYNDA GARCIA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 319th District Court


 of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Benavides, and Vela


Memorandum Opinion by Justice Benavides



 Appellant, Linda Garcia a/k/a Lynda Garcia, brings two appeals, which we consider
together. In appellate cause number 13-09-262-CR, (1) Garcia appeals the trial court's
revocation of her deferred adjudication community supervision, pursuant to which she was
convicted for aggravated assault with a deadly weapon and sentenced to twenty years'
imprisonment. See Tex. Penal Code Ann. § 22.02 (Vernon Supp. 2009); Tex. Code Crim.
Proc. Ann. art. 42.12 § 23(b) (Vernon Supp. 2009) ("When [the defendant] is notified that
his community supervision is revoked for violation of the conditions of community
supervision and he is called on to serve a sentence in a jail or in the Texas Department of
Criminal Justice, he may appeal the revocation."). In appellate cause number 13-09-263-CR, (2) Garcia appeals her conviction for tampering with physical evidence, for which she was
sentenced to ten years' imprisonment running concurrently with the sentence for
aggravated assault. See Tex. Penal Code Ann. § 37.09 (Vernon Supp. 2009). 

 By three issues, which we reorganize as two, Garcia argues that (1) the trial court
erred in finding that she knowingly and voluntarily entered a plea of true to the allegations
in the motion to revoke (cause number 13-09-262-CR) and guilty to the charge of
tampering with physical evidence (cause number 13-09-263-CR); (3) and (2) the stipulated
evidence is insufficient to sustain her conviction for tampering with physical evidence
(cause number 13-09-263-CR). We affirm.

I. Background (4)

 On December 11, 2008, Garcia was indicted for aggravated assault. Garcia
pleaded guilty and was placed on deferred adjudication community supervision for five
years. On March 24, 2009, the State filed a motion to revoke Garcia's community
supervision, alleging that Garcia failed to report to her probation officer for the initial intake
interview on March 2, 5, 23, and 24, 2009. Garcia pleaded "true" to the allegation and was
sanctioned, but the trial court continued her community supervision.

 On April 23, 2009, Garcia was indicted in a separate case for tampering with
physical evidence. The indictment alleged that on April 15, 2009, Garcia, "while knowing
that an investigation was in progress . . . of whether [she] was in possession of drug
paraphernalia or a controlled substance, intentionally and knowingly destroy[ed] a crack
pipe, with [the] intent to impair its availability as evidence in the investigation." Based on
this new indictment, the State again sought to revoke Garcia's community supervision.

 On April 29, 2009, the trial court held a hearing on the motion to revoke and on a
proposed guilty plea to the tampering charge pursuant to a plea agreement with the State. (5) 
At the hearing, the trial court asked whether Garcia was satisfied with her lawyer's
representation, and the following exchange occurred, which resulted in the State revoking
its plea offer:

 The Court: And are you satisfied with the way your lawyer
has represented you?

 

 [Garcia]: Not really.

 

 The Court: Okay. What problem do you have?

 

 [Garcia]: I don't know. I'm just not happy, but it don't [sic]
matter.

 

 The Court: Okay. Has he done anything that you didn't
want him to do?

 

 [Garcia]: He lied to me. He said this was going to get
dismissed. He did[;] he lied to me. He said I
should have been going home today. So I don't
know. I don't feel like talking after this, that's
why he's here. So just say what you got to say.

 

 The Court: Okay.

 

 [Defense Counsel]: Well, basically Ms. Garcia, you've been indicted
on a new case on the 23rd of April. This is
your--our setting today was set for a motion to
revoke, but now there's a new case[,] and we've
talked about this new case[,] and we don't have
to do anything today. We have a ten-day
statutory period. But you wanted to waive or
give up those ten days and proceed with this
plea bargain today. Are you telling the Court
now that you do not wish to waive that ten-day
period[,] and you want to have a reset in a
couple of weeks after you have had time to think
about this some more?

 

 [Garcia]: I don't know if there's any time to think because
last I heard I was going to get screwed anyway,
so do what you got to do.

 

 [Defense Counsel]: Well, ma'am, we're not here to do anything
except advise you of your rights as far as this
and that you would like to waive these rights or
to give them up. Would you like to proceed
today, or do you need additional time?

 

 [Garcia]: Go ahead and do what you got to do. You're my
attorney, go ahead and do whatever.

 

 [Defense Counsel]: Well, I'm not here to make these decisions for
you. I'm here to advise you of your rights, advise
you of the evidence, advise you of any possible
defenses. We've been in the jury room for about
an hour and a half this morning going over
everything.

 

 [Garcia]: Uh-huh.

 

 [Defense Counsel]: If you feel we need additional time, if there's
other witnesses-- 

 

 [Garcia]: Go ahead. Let's get it over with.

 

 [The Court]: This has to be your decision. It's not your
lawyer's to proceed.


 [Garcia]: Your Honor, I honestly don't think it matters,
because I'm going to get screwed anyways, from
my understanding.

 

 [The Court]: Okay.

 

 [Defense Counsel]: Your Honor, I don't know--I think that this
morning to proceed would be--

 

 [Garcia]: No. I want to get it over with. Let's proceed. 
Let's get it over with. We already signed the
papers.

 

 [The State]: Your Honor, the State is going to withdraw their
plea offer, and she can either go open to the
Court, or she can go to trial, because I'm hearing
this attitude[,] and I'm not going to do this.

 

 [The Court]: Okay. Well, Ms. Garcia, do you wish to proceed
today?

 

 [Garcia]: Yes. I want to get it over with.

 

 [The Court]: Okay.

 

 [The State]: There's no plea offer, Judge. So if she wants to
go open to the Court, she can do it.

 

 [The Court]: All right. Did you want more time to talk with
your lawyer about what the State is now saying,
or do you want to proceed?

 

 [Garcia]: Just proceed. Let's get it over with.


 The trial court then reviewed the written admonishments that Garcia signed for each
case. The trial court confirmed with Garcia that her attorney went over the paperwork for
both cases, that her attorney explained all the papers, and that she was not forced to sign
the papers. The trial court asked whether anyone promised her anything in exchange for
her signature on the papers, and Garcia replied, "I got promised to get dismissed and it
didn't happen." The trial court then informed Garcia that the State would not dismiss the
revocation proceeding or the new indictment for tampering with evidence, and the court
asked Garcia whether anyone had promised her anything since she found out that the
cases were not being dismissed. Garcia answered, "No." 

 At this point, the State interrupted the court to reiterate that no plea bargain would
be offered and to inquire whether Garcia intended to plead true anyway:

 [The State]: Excuse me, Your Honor. I'm sorry to interrupt. 
There is no plea bargain. And she's not going to
plead true to the allegation in the motion to
revoke. The State will need a continuance to get
its witnesses here for the motion to revoke. If
she is going to plead true, the State is ready to
go forward on the [motion to revoke], but it's an
open plea to the Court.

 

 [The Court]: All right. Ms. Garcia, did you sign all of the
paperwork freely and voluntarily?

 

 [Garcia]: Yes.

 

 [The Court]: And do you have any questions about what you
signed?

 

 [Garcia]: No.

 

 [The Court]: Do you have any questions about anything that's
going on here today?

 

 [Garcia]: No.



 The trial court accepted the paperwork submitted, which included the trial court's
written admonishments in both the revocation proceeding and the evidence tampering
proceeding. The documents were signed by Garcia. Both sets of documents clearly state
that Garcia understood the range of punishment for the offenses and that the plea of "true"
or "guilty" was being made freely, voluntarily, knowingly, and intelligently. The
admonishment regarding the revocation stated the following:

 No Plea Bargaining: There is no plea bargaining in revocation or
adjudication proceedings. If you entered a plea of guilty/nolo contendere
pursuant to a plea bargain agreement, that plea bargain agreement does not
carry forward to revocation or adjudication proceedings. Therefore, if your
plea of true is based on an agreement with the State that the State make a
specific recommendation on punishment but the Court does not follow that
recommendation, you will not be allowed to withdraw your plea of true. (6)


 The admonishment regarding the tampering charge stated the following:


 Plea Bargain Agreement. You and your attorney may enter into a plea
bargain agreement with the State. If the Court accepts your plea and
approves the agreement, the Court will follow the agreement and assess
your punishment not to exceed the plea bargain. Keep in mind that the
Court did not participate in any plea bargaining or negotiation in your case.

 

 May Withdraw Plea. If the Court rejects the plea bargain agreement, you
will be allowed to withdraw your plea, if that is what you want to do. Your
case will then be set for trial before the Court or a jury on your plea of not
guilty.

 

 . . . .

 

 If No Plea Bargain. If you enter a plea of guilty/nolo contendere without a
plea bargain agreement, you waive or lose your right to appeal any error in
the case if the judgment was made independent of the claimed error and is
not supported by said error. This means that if you decide to appeal, you will
have almost nothing to appeal and you will likely lose on appeal.


 Garcia then pleaded "true" to the allegations in the State's motion to revoke and
"guilty" to the charge of tampering with evidence. Garcia verbally confirmed that no one
forced her to plead guilty, that no one promised her anything in exchange for her guilty
plea, and that she was making her pleas freely and voluntarily. 

 The State then informed the court that it would rely on the pleas and call Garcia's
probation officer to testify. Vanessa Vasquez testified that she was a supervision officer. 
She stated that Garcia initially did not report for her intake, so the State filed a motion to
revoke. After that, Garcia was given an appointment with her probation officer, but she
never reported. Vasquez testified that the court sanctioned Garcia to seven days in jail for
the initial motion to revoke. Vasquez opined that the State had tried to work with Garcia,
but she was not a good candidate for probation because the current proceeding was the
second revocation proceeding in a short period of time. On cross-examination, Vasquez
testified that the recommendation of the supervision department "in this case" was
"SAFPF" (Substance Abuse Felony Punishment Facility).

 Regarding the evidence tampering charge, the State offered a judicial confession
and stipulation into evidence. The judicial confession and stipulation, signed and sworn
to by Garcia, stated:

 On this day in open Court, I, LINDA GARCIA A/K/A LYNDA GARCIA, waive
my right against self-incrimination and hereby judicially confess that on
APRIL 15, [] 2009, in Nueces County, Texas, I, did then and there, while
knowing that an investigation was in progress, to wit: an investigation of
whether Defendant was in possession of drug paraphernalia or a controlled
substance, intentionally and knowingly destroy a crack pipe, with intent to
impair its availability as evidence in the investigation. I hereby agree and
stipulate that the facts contained in this instrument and its attached exhibits,
if any, are true and correct.


 Attached to the confession was an "Incident/Investigation Report" detailing the
events observed by P. McMenamy, the officer who arrested Garcia. It states that he
observed Garcia sitting on a concrete wall outside a gas station, and she was swaying
back and forth as if she were intoxicated. Officer McMenamy pulled into the parking lot,
and Garcia quickly got up and walked over to the police car and began talking to him
through the passenger window of his patrol car. 

 Officer McMenamy recognized Garcia and knew her as a crack cocaine user. He
could smell an odor of alcohol on her breath. Her speech was slurred, and her eyes were
bloodshot. Officer McMenamy stated that as she leaned over to the car, Garcia tried to
reach into the left side of her bra as if she were concealing something. Officer McMenamy
advised Garcia to step back away from the unit and keep her hands visible as he exited
the car.

 When Officer McMenamy exited the unit, Garcia again tried to reach into her bra. 
He ordered her to take her hand out, and she did. Garcia then stepped back and
stumbled. Officer McMenamy asked Garcia if she had been drinking, and Garcia replied,
"I'm fucked up fool." Garcia informed Officer McMenamy that she had been drinking at
Popeye's bar. Officer McMenamy asked what Garcia had been attempting to conceal in
her bra, to which she replied, "I don't have shit in my bra fool." Officer McMenamy stated
that he asked Garcia to pull her bra away from her chest, not exposing her breast, and
shake it out. She started to pull her right breast out of the top of her shirt, and Officer
McMenamy told her to stop. She then tried to pull her other breast out while holding the
bottom left side of her bra "as if she was trying to hold onto whatever she had in her bra." 
Officer McMenamy again told her to stop, and she finally did.

 Officer McMenamy then placed Garcia under arrest for public intoxication and called
for a female officer to search Garcia. While waiting for the female officer, another police
officer, Officer Bauer, arrived. Officer Bauer asked what was in Garcia's bra, and she said,
"I got a crack pipe Bauer." Garcia told Officer Bauer she would get it out for him, and he
told her to wait until the female officer arrived to search her. Garcia then reached around
with her left hand and pulled her bra from the side, causing a used glass crack pipe to fall
from the left side of her bra.

 As Officer McMenamy bent down to pick it up, Garcia intentionally stomped on the
crack pipe with her left foot, destroying it and preventing Officer McMenamy from collecting
it as evidence. After informing Garcia that she would be placed under arrest for
possession of drug paraphernalia and tampering with evidence, Garcia stated, "I destroyed
that pipe and so what fool." 

 The trial court accepted the stipulations into evidence. Defense counsel then called
Garcia to testify. On direct examination, Garcia testified that prior to the hearing, she and
defense counsel discussed her rights to a trial, and she confirmed that she was entering
a guilty plea. She testified that prior to the hearing, she discussed a plea bargain with her
attorney, and she believed the offer was for four years. The following exchange occurred:

 [Defense Counsel]: Now, subsequently that's been removed
from the State, and so now we're going
open. You are still asking this Court for a
sentence of four years T.D.C. on this
case; is that correct?

 

 [Garcia]: I don't know. The Judge is going to have to do
whatever he needs to do, if it's open. I don't
know.

 

 [Defense Counsel]: Well, you understand that the probation
department is asking that you go to SAFPF and
to go to special needs. Is that what you're
asking this Court to do.

 

 [Garcia]: I don't know. It's up to the Judge. Like I said, I
don't know. I don't know.


Thereafter, Garcia testified that her attorney explained the range of punishment and the
parole system to her, expressly stating that she could receive between two and twenty
years' imprisonment and up to a $10,000 fine for the aggravated assault and two to ten
years' imprisonment and up to a $10,000 fine for the evidence tampering charge. 

 Defense counsel stated that he was asking the court to sentence her to four years
and asked if Garcia agreed with that recommendation; she responded that she thought that
punishment was "harsh . . . just for a crack pipe, I think that's stupid." She claimed that
Officer McMenamy had a vendetta against her, that he did not give her a breathalyzer, and
that she takes "pills that make [her] drowsy." She concluded, 

 So basically, I mean, what the law is set up where you-all are right and I'm
wrong. So I don't know. You-all are gonna do whatever you-all want to
do. . . . .   I don't want to be on paper anymore. I don't want--if I go to
prison, I don't want to be on any kind of nothing. I don't want to answer to
her, I don't want to answer to anybody. I just want to go home to my kids,
that's it.


 On cross-examination, Garcia again confirmed that she understood the range of
punishment. She denied that on the night in question, she was using drugs; she claimed
that she had been drinking instead. The prosecutor asked, "And according to the officers,
they said you had a crack pipe and you stepped on it. And then you made the statement,
'I destroyed that pipe. So what, fool.'" Garcia responded, "So? I don't respect the law. 
So?" The prosecutor asked whether she respected the judge or the prosecutor, and she
said she did not know. The prosecutor then asked, "And you just want to do what you want
to do, right?" Garcia responded, "No. I just want to get this over with so I can go to sleep." 

 At the conclusion of the hearing, the trial court found that Garcia violated the terms
of her community supervision and revoked it. The court then found her guilty of aggravated
assault with a deadly weapon and sentenced her to twenty years' imprisonment. The court
also found her guilty of tampering with physical evidence and sentenced her to ten years'
imprisonment, to run concurrently. This appeal ensued.

II. Voluntary Pleas

 By her first issue, Garcia argues that the trial court erred by finding that her pleas
of "true" in the revocation proceeding and "guilty" to the charge of tampering with physical
evidence were voluntary. Garcia argues that at the beginning of the hearing, she believed
she would be sentenced to four years in prison pursuant to a plea bargain. After the plea
bargain was withdrawn, Garcia's plea was rendered involuntary because she was "no
longer properly informed of the consequences of her plea." The State points out that after
the plea was withdrawn, Garcia was admonished numerous times that she could have a
continuance to consider the charges more fully, but Garcia refused that offer and insisted
on pleading to the charges. We agree with the State that Garcia has not shown that her
plea is involuntary.

A. Standard of Review

 When considering the voluntariness of a guilty plea, we examine the record as a
whole. See Martinez v. State, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam). 
"A finding that a defendant was duly admonished creates a prima facie showing that a
guilty plea was entered knowingly and voluntarily." Id. Despite a proper admonishment,
a defendant may still claim his or her plea was involuntary, but the burden in that case
shifts to the defendant to prove that he or she "did not fully understand the consequences
of his plea such that he suffered harm." Id. 

B. Application

 In this case, it is undisputed that Garcia was admonished as to the consequences
of pleading "true" to the allegations in the State's motion to revoke. Furthermore, with
respect to the evidence tampering charge, Garcia was admonished that if the trial court did
not accept the plea agreement, she would be free to withdraw her guilty plea and proceed
to trial. Garcia was duly advised of the punishment ranges for the offenses. Thus, the
burden shifted to Garcia to prove that her pleas were involuntary. Id.

 Garcia relies on the events that occurred prior to and at the beginning of the
revocation and plea hearing to argue that she did not understand the consequences of her
pleas. Garcia argues that she believed the evidence tampering charge would be dismissed
and that she would receive four years' imprisonment for the aggravated assault because
of the plea bargain. That may have been true at the beginning of the hearing. However,
the State revoked the plea bargain immediately thereafter and stated that it would not
agree to the deal. Garcia's brief does not acknowledge or address the fact that the trial
court, Garcia's attorney, and the State offered to let Garcia have a continuance to consider
her pleas and the opportunity to go to trial, but Garcia refused. Furthermore, Garcia's
claim that she did not understand the consequences of her pleas of "true" and "guilty" is
belied by her repeated acknowledgment that she understood the range of punishment and
that no plea bargain was being offered. In fact, she expressly responded that she
understood that her punishment was "up to the Judge." Under the circumstances, given
the repeated admonishments and Garcia's repeated insistence on proceeding with the
hearing, along with her consistent acknowledgment that she understood what was
transpiring and the consequences of her pleas, we hold that Garcia failed to prove that her
pleas were involuntary. Cf. Huffman v. State, 676 S.W.2d 677, 682 (Tex. App.-Houston
[1st Dist.] 1984, no pet.) (holding that the defendant's plea was not voluntary where it was
based on promises by the State and by the defendant's attorney that the State would seek
leniency with the trial court in sentencing if the defendant pleaded guilty and testified). We
overrule Garcia's first issue.

III. Sufficiency of the Evidence

 By her second issue, Garcia argues that the State's evidence of her guilt is
insufficient to support her conviction for tampering with physical evidence. We disagree.

A. Standard of Review and Applicable Law

 When a defendant enters a plea of guilty to a felony, the State must introduce
evidence into the record showing that the defendant is guilty of the alleged crime. See
Tex. Code Crim. Proc. Ann. art. 1.15 (Vernon 2005). "No trial court is authorized to render
a conviction in a felony case, consistent with Article 1.15, based upon a plea of guilty
'without sufficient evidence to support the same.'" Menefee v. State, 287 S.W.3d 9, 13
(Tex. Crim. App. 2009) (quoting Tex. Code Crim. Proc. Ann. art. 1.15). As the Texas
Court of Criminal Appeals has explained, the evidence used to support a guilty plea may
take many forms, including a sworn written statement admitting culpability:

 [O]ur case law has recognized that the defendant may enter a sworn written
statement, or may testify under oath in open court, specifically admitting his
culpability or at least acknowledging generally that the allegations against
him are in fact true and correct; and again, so long as such a judicial
confession covers all of the elements of the charged offense, it will suffice to
support the guilty plea. However, a stipulation of evidence or judicial
confession that fails to establish every element of the offense charged will
not authorize the trial court to convict. A conviction rendered without
sufficient evidence to support a guilty plea constitutes trial error. 


Id. at 13-14 (footnotes and citations omitted). A person commits the offense of tampering
with evidence if the person, "knowing that an investigation or official proceeding is pending
or in progress, . . . (1) alters, destroys, or conceals any record, document, or thing with
intent to impair its verity, legibility or availability as evidence in the investigation or official
proceeding . . . ." See Tex. Penal Code Ann. § 37.09.

B. Analysis


 Garcia argues that to support her guilty plea, the State was required to prove that
Garcia knew that an investigation was "in progress." Garcia argues that at the time the
officer approached her, the officer believed she was intoxicated. As the officer spoke to
Garcia, he noticed her eyes were blood shot and that she had the odor of alcohol on her
breath. Thus, she was placed under arrest for public intoxication. For these reasons,
Garcia argues that an investigation for possession of drug paraphernalia was not "in
progress," and the State did not prove that Garcia knew that an investigation for drug
paraphernalia was "in progress."

 Garcia's argument ignores the sequence of events set out in the offense report,
which Garcia swore was "true and correct," and Garcia's testimony at the plea hearing. It
is true that initially, Officer McMenamy believed that Garcia had been drinking alcohol. But
before he got out of his car to speak with her, she was making attempts to conceal the
pipe. As he exited the vehicle, Officer McMenamy told Garcia to keep her hands visible,
which should have put her on notice that he was concerned about her actions in trying to
conceal what was in her shirt. 

 After Officer McMenamy exited the car, Garcia again tried to reach into her bra. He
ordered her to take her hand out, and she did. Garcia then stepped back and stumbled. 
Officer McMenamy asked Garcia if she had been drinking, and Garcia replied, "I'm fucked
up fool." Officer McMenamy asked what Garcia had been attempting to conceal in her bra,
to which she replied, "I don't have shit in my bra fool." Officer McMenamy asked Garcia
to shake out whatever was in her bra, and she attempted to do so without allowing the left
side to move away from her body, "as if she was trying to hold onto whatever she had in
her bra." Officer McMenamy again told her to stop, and she finally did. All of this occurred
before Garcia was placed under arrest for public intoxication. Thus, it is disingenuous to
say that the investigation up to that point was only focused on Garcia's intoxication and not
on what she was attempting to conceal in her bra. Furthermore, before Garcia destroyed
the crack pipe, Garcia told Officer Bauer that she had a crack pipe in her bra. At that point,
it should have been obvious to Garcia that the investigation was shifting to what she was
concealing. 

 Based on all this evidence, we hold that the record supports Garcia's guilty plea
and, in particular, a finding that she knew that an investigation of possession of drug
paraphernalia was in progress at the time she destroyed the crack pipe. See Williams v.
State, 270 S.W.3d 140, 143 (Tex. Crim. App. 2008) (holding that the evidence was
sufficient to support a finding that the defendant knew an investigation was in progress,
where the defendant stepped on a crack pipe that fell out of his pocket during a patdown
for weapons, even though the indictment said the investigation for weapons and not for
possession of drug paraphernalia); see also Dooley v. State, 133 S.W.3d 374, 378 (Tex.
App.-Austin 2004, pet. ref'd). We overrule Garcia's second issue. 

IV. Conclusion

 Having overruled all Garcia's issues, we affirm the trial court's judgments in both
appellate causes.



 __________________________

 GINA M. BENAVIDES,

 Justice



Do not publish.

See Tex. R. App. P. 47.2(b).


Delivered and filed the

31st day of August, 2010.





1. Trial court cause number 08-CR-3711-G.
2. Trial court cause number 09-CR-1171-G.
3. These issues are nearly identical, and we will address them as a single issue.
4. Because this is a memorandum opinion and the parties are familiar with the facts, we will only
discuss the facts insofar as they relate to the ultimate disposition of this appeal. See Tex. R. App. P. 47.1.
5. Before the hearing, the State made a plea offer to Garcia, and she intended to accept it. It is not
entirely clear from the record what the precise agreement was between Garcia and the State or to which
cause the agreement related. 
6. See Gutierrez v. State, 108 S.W.3d 304, 310 (Tex. Crim. App. 2003) (holding that defendant who
has entered into plea bargain in revocation proceeding does not have the right to withdraw his or her plea of
true if trial court does not follow the State's sentencing recommendation).