

NUMBER 13-09-00262-CR
NUMBER 13-09-00263-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LINDA GARCIA A/K/A LYNDA GARCIA,                    Appellant,

v.

THE STATE OF TEXAS,                    Appellee.

### On appeal from the 319th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Benavides

Appellant, Linda Garcia a/k/a Lynda Garcia, brings two appeals, which we consider

together. In appellate cause number 13-09-262-CR,[1] Garcia appeals the trial court's

---

[1] Trial court cause number 08-CR-3711-G.

revocation of her deferred adjudication community supervision, pursuant to which she was convicted for aggravated assault with a deadly weapon and sentenced to twenty years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.02 (Vernon Supp. 2009); TEX. CODE CRIM. PROC. ANN. art. 42.12 § 23(b) (Vernon Supp. 2009) ("When [the defendant] is notified that his community supervision is revoked for violation of the conditions of community supervision and he is called on to serve a sentence in a jail or in the Texas Department of Criminal Justice, he may appeal the revocation."). In appellate cause number 13-09-263-CR,[2] Garcia appeals her conviction for tampering with physical evidence, for which she was sentenced to ten years' imprisonment running concurrently with the sentence for aggravated assault. *See* TEX. PENAL CODE ANN. § 37.09 (Vernon Supp. 2009).

By three issues, which we reorganize as two, Garcia argues that (1) the trial court erred in finding that she knowingly and voluntarily entered a plea of true to the allegations in the motion to revoke (cause number 13-09-262-CR) and guilty to the charge of tampering with physical evidence (cause number 13-09-263-CR);[3] and (2) the stipulated evidence is insufficient to sustain her conviction for tampering with physical evidence (cause number 13-09-263-CR). We affirm.

## I. BACKGROUND[4]

On December 11, 2008, Garcia was indicted for aggravated assault. Garcia pleaded guilty and was placed on deferred adjudication community supervision for five years. On March 24, 2009, the State filed a motion to revoke Garcia's community

---

[2] Trial court cause number 09-CR-1171-G.

[3] These issues are nearly identical, and we will address them as a single issue.

[4] Because this is a memorandum opinion and the parties are familiar with the facts, we will only discuss the facts insofar as they relate to the ultimate disposition of this appeal. *See* TEX. R. APP. P. 47.1.

supervision, alleging that Garcia failed to report to her probation officer for the initial intake interview on March 2, 5, 23, and 24, 2009. Garcia pleaded "true" to the allegation and was sanctioned, but the trial court continued her community supervision.

On April 23, 2009, Garcia was indicted in a separate case for tampering with physical evidence. The indictment alleged that on April 15, 2009, Garcia, "while knowing that an investigation was in progress . . . of whether [she] was in possession of drug paraphernalia or a controlled substance, intentionally and knowingly destroy[ed] a crack pipe, with [the] intent to impair its availability as evidence in the investigation." Based on this new indictment, the State again sought to revoke Garcia's community supervision.

On April 29, 2009, the trial court held a hearing on the motion to revoke and on a proposed guilty plea to the tampering charge pursuant to a plea agreement with the State.[5] At the hearing, the trial court asked whether Garcia was satisfied with her lawyer's representation, and the following exchange occurred, which resulted in the State revoking its plea offer:

| The Court: | And are you satisfied with the way your lawyer has represented you? |
|---|---|
| [Garcia]: | Not really. |
| The Court: | Okay. What problem do you have? |
| [Garcia]: | I don't know. I'm just not happy, but it don't [sic] matter. |
| The Court: | Okay. Has he done anything that you didn't want him to do? |

---

[5] Before the hearing, the State made a plea offer to Garcia, and she intended to accept it. It is not entirely clear from the record what the precise agreement was between Garcia and the State or to which cause the agreement related.

| | |
|---|---|
| [Garcia]: | He lied to me. He said this was going to get dismissed. He did[;] he lied to me. He said I should have been going home today. So I don't know. I don't feel like talking after this, that's why he's here. So just say what you got to say. |
| The Court: | Okay. |
| [Defense Counsel]: | Well, basically Ms. Garcia, you've been indicted on a new case on the 23rd of April. This is your—our setting today was set for a motion to revoke, but now there's a new case[,] and we've talked about this new case[,] and we don't have to do anything today. We have a ten-day statutory period. But you wanted to waive or give up those ten days and proceed with this plea bargain today. Are you telling the Court now that you do not wish to waive that ten-day period[,] and you want to have a reset in a couple of weeks after you have had time to think about this some more? |
| [Garcia]: | I don't know if there's any time to think because last I heard I was going to get screwed anyway, so do what you got to do. |
| [Defense Counsel]: | Well, ma'am, we're not here to do anything except advise you of your rights as far as this and that you would like to waive these rights or to give them up. Would you like to proceed today, or do you need additional time? |
| [Garcia]: | Go ahead and do what you got to do. You're my attorney, go ahead and do whatever. |
| [Defense Counsel]: | Well, I'm not here to make these decisions for you. I'm here to advise you of your rights, advise you of the evidence, advise you of any possible defenses. We've been in the jury room for about an hour and a half this morning going over everything. |
| [Garcia]: | Uh-huh. |
| [Defense Counsel]: | If you feel we need additional time, if there's |

4

|                      |                                                                                                              |
|----------------------|--------------------------------------------------------------------------------------------------------------|
| other witnesses—     |                                                                                                              |

[Garcia]: Go ahead. Let's get it over with.

[The Court]: This has to be your decision. It's not your lawyer's to proceed.

[Garcia]: Your Honor, I honestly don't think it matters, because I'm going to get screwed anyways, from my understanding.

[The Court]: Okay.

[Defense Counsel]: Your Honor, I don't know—I think that this morning to proceed would be—

[Garcia]: No. I want to get it over with. Let's proceed. Let's get it over with. We already signed the papers.

[The State]: Your Honor, the State is going to withdraw their plea offer, and she can either go open to the Court, or she can go to trial, because I'm hearing this attitude[,] and I'm not going to do this.

[The Court]: Okay. Well, Ms. Garcia, do you wish to proceed today?

[Garcia]: Yes. I want to get it over with.

[The Court]: Okay.

[The State]: There's no plea offer, Judge. So if she wants to go open to the Court, she can do it.

[The Court]: All right. Did you want more time to talk with your lawyer about what the State is now saying, or do you want to proceed?

[Garcia]: Just proceed. Let's get it over with.

The trial court then reviewed the written admonishments that Garcia signed for each case. The trial court confirmed with Garcia that her attorney went over the paperwork for

5

both cases, that her attorney explained all the papers, and that she was not forced to sign the papers. The trial court asked whether anyone promised her anything in exchange for her signature on the papers, and Garcia replied, "I got promised to get dismissed and it didn't happen." The trial court then informed Garcia that the State would not dismiss the revocation proceeding or the new indictment for tampering with evidence, and the court asked Garcia whether anyone had promised her anything since she found out that the cases were not being dismissed. Garcia answered, "No."

At this point, the State interrupted the court to reiterate that no plea bargain would be offered and to inquire whether Garcia intended to plead true anyway:

| [The State]: | Excuse me, Your Honor. I'm sorry to interrupt. There is no plea bargain. And she's not going to plead true to the allegation in the motion to revoke. The State will need a continuance to get its witnesses here for the motion to revoke. If she is going to plead true, the State is ready to go forward on the [motion to revoke], but it's an open plea to the Court. |
| --- | --- |
| [The Court]: | All right. Ms. Garcia, did you sign all of the paperwork freely and voluntarily? |
| [Garcia]: | Yes. |
| [The Court]: | And do you have any questions about what you signed? |
| [Garcia]: | No. |
| [The Court]: | Do you have any questions about anything that's going on here today? |
| [Garcia]: | No. |

The trial court accepted the paperwork submitted, which included the trial court's

6

written admonishments in both the revocation proceeding and the evidence tampering proceeding. The documents were signed by Garcia. Both sets of documents clearly state that Garcia understood the range of punishment for the offenses and that the plea of "true" or "guilty" was being made freely, voluntarily, knowingly, and intelligently. The admonishment regarding the revocation stated the following:

> **No Plea Bargaining:** There is no plea bargaining in revocation or adjudication proceedings. If you entered a plea of guilty/nolo contendere pursuant to a plea bargain agreement, that plea bargain agreement does not carry forward to revocation or adjudication proceedings. Therefore, if your plea of true is based on an agreement with the State that the State make a specific recommendation on punishment but the Court does not follow that recommendation, *you will not be allowed to withdraw your plea of true.*[6]

The admonishment regarding the tampering charge stated the following:

> **Plea Bargain Agreement.** You and your attorney may enter into a plea bargain agreement with the State. If the Court accepts your plea and approves the agreement, the Court will follow the agreement and assess your punishment not to exceed the plea bargain. Keep in mind that the Court did not participate in any plea bargaining or negotiation in your case.

> **May Withdraw Plea.** If the Court rejects the plea bargain agreement, you will be allowed to withdraw your plea, if that is what you want to do. Your case will then be set for trial before the Court or a jury on your plea of not guilty.

> . . . .

> **If No Plea Bargain.** If you enter a plea of guilty/nolo contendere without a plea bargain agreement, you waive or lose your right to appeal any error in the case if the judgment was made independent of the claimed error and is not supported by said error. This means that if you decide to appeal, you will have almost nothing to appeal and you will likely lose on appeal.

Garcia then pleaded "true" to the allegations in the State's motion to revoke and

---

[6] *See Gutierrez v. State*, 108 S.W.3d 304, 310 (Tex. Crim. App. 2003) (holding that defendant who has entered into plea bargain in revocation proceeding does not have the right to withdraw his or her plea of true if trial court does not follow the State's sentencing recommendation).

"guilty" to the charge of tampering with evidence. Garcia verbally confirmed that no one forced her to plead guilty, that no one promised her anything in exchange for her guilty plea, and that she was making her pleas freely and voluntarily.

The State then informed the court that it would rely on the pleas and call Garcia's probation officer to testify. Vanessa Vasquez testified that she was a supervision officer. She stated that Garcia initially did not report for her intake, so the State filed a motion to revoke. After that, Garcia was given an appointment with her probation officer, but she never reported. Vasquez testified that the court sanctioned Garcia to seven days in jail for the initial motion to revoke. Vasquez opined that the State had tried to work with Garcia, but she was not a good candidate for probation because the current proceeding was the second revocation proceeding in a short period of time. On cross-examination, Vasquez testified that the recommendation of the supervision department "in this case" was "SAFPF" (Substance Abuse Felony Punishment Facility).

Regarding the evidence tampering charge, the State offered a judicial confession and stipulation into evidence. The judicial confession and stipulation, signed and sworn to by Garcia, stated:

> On this day in open Court, I, LINDA GARCIA A/K/A LYNDA GARCIA, waive my right against self-incrimination and hereby judicially confess that on APRIL 15, [] 2009, in Nueces County, Texas, I, did then and there, while knowing that an investigation was in progress, to wit: an investigation of whether Defendant was in possession of drug paraphernalia or a controlled substance, intentionally and knowingly destroy a crack pipe, with intent to impair its availability as evidence in the investigation. I hereby agree and stipulate that the facts contained in this instrument and its attached exhibits, if any, are true and correct.

Attached to the confession was an "Incident/Investigation Report" detailing the events observed by P. McMenamy, the officer who arrested Garcia. It states that he

8

observed Garcia sitting on a concrete wall outside a gas station, and she was swaying back and forth as if she were intoxicated.  Officer McMenamy pulled into the parking lot, and Garcia quickly got up and walked over to the police car and began talking to him through the passenger window of his patrol car.

Officer McMenamy recognized Garcia and knew her as a crack cocaine user.  He could smell an odor of alcohol on her breath.  Her speech was slurred, and her eyes were bloodshot.  Officer McMenamy stated that as she leaned over to the car, Garcia tried to reach into the left side of her bra as if she were concealing something.  Officer McMenamy advised Garcia to step back away from the unit and keep her hands visible as he exited the car.

When Officer McMenamy exited the unit, Garcia again tried to reach into her bra.  He ordered her to take her hand out, and she did.  Garcia then stepped back and stumbled.  Officer McMenamy asked Garcia if she had been drinking, and Garcia replied, "I'm fucked up fool."  Garcia informed Officer McMenamy that she had been drinking at Popeye's bar.  Officer McMenamy asked what Garcia had been attempting to conceal in her bra, to which she replied, "I don't have shit in my bra fool."  Officer McMenamy stated that he asked Garcia to pull her bra away from her chest, not exposing her breast, and shake it out.  She started to pull her right breast out of the top of her shirt, and Officer McMenamy told her to stop.  She then tried to pull her other breast out while holding the bottom left side of her bra "as if she was trying to hold onto whatever she had in her bra."  Officer McMenamy again told her to stop, and she finally did.

Officer McMenamy then placed Garcia under arrest for public intoxication and called

for a female officer to search Garcia. While waiting for the female officer, another police officer, Officer Bauer, arrived. Officer Bauer asked what was in Garcia's bra, and she said, "I got a crack pipe Bauer." Garcia told Officer Bauer she would get it out for him, and he told her to wait until the female officer arrived to search her. Garcia then reached around with her left hand and pulled her bra from the side, causing a used glass crack pipe to fall from the left side of her bra.

As Officer McMenamy bent down to pick it up, Garcia intentionally stomped on the crack pipe with her left foot, destroying it and preventing Officer McMenamy from collecting it as evidence. After informing Garcia that she would be placed under arrest for possession of drug paraphernalia and tampering with evidence, Garcia stated, "I destroyed that pipe and so what fool."

The trial court accepted the stipulations into evidence. Defense counsel then called Garcia to testify. On direct examination, Garcia testified that prior to the hearing, she and defense counsel discussed her rights to a trial, and she confirmed that she was entering a guilty plea. She testified that prior to the hearing, she discussed a plea bargain with her attorney, and she believed the offer was for four years. The following exchange occurred:

| [Defense Counsel]: | Now, subsequently that's been removed from the State, and so now we're going open. You are still asking this Court for a sentence of four years T.D.C. on this case; is that correct? |
| --- | --- |
| [Garcia]: | I don't know. The Judge is going to have to do whatever he needs to do, if it's open. I don't know. |
| [Defense Counsel]: | Well, you understand that the probation department is asking that you go to SAFPF and |

10

|  |  |
|---|---|
|  | to go to special needs.  Is that what you're asking this Court to do. |
| [Garcia]: | I don't know.  It's up to the Judge.  Like I said, I don't know.  I don't know. |

Thereafter, Garcia testified that her attorney explained the range of punishment and the parole system to her, expressly stating that she could receive between two and twenty years' imprisonment and up to a $10,000 fine for the aggravated assault and two to ten years' imprisonment and up to a $10,000 fine for the evidence tampering charge.

Defense counsel stated that he was asking the court to sentence her to four years and asked if Garcia agreed with that recommendation; she responded that she thought that punishment was "harsh . . . just for a crack pipe, I think that's stupid."  She claimed that Officer McMenamy had a vendetta against her, that he did not give her a breathalyzer, and that she takes "pills that make [her] drowsy."  She concluded,

> So basically, I mean, what the law is set up where you-all are right and I'm wrong.  So I don't know.  You-all are gonna do whatever you-all want to do. . . . .   I don't want to be on paper anymore.  I don't want—if I go to prison, I don't want to be on any kind of nothing.  I don't want to answer to her, I don't want to answer to anybody.  I just want to go home to my kids, that's it.

On cross-examination, Garcia again confirmed that she understood the range of punishment.  She denied that on the night in question, she was using drugs; she claimed that she had been drinking instead.  The prosecutor asked, "And according to the officers, they said you had a crack pipe and you stepped on it.  And then you made the statement, 'I destroyed that pipe.  So what, fool.'" Garcia responded, "So?  I don't respect the law.  So?"  The prosecutor asked whether she respected the judge or the prosecutor, and she said she did not know.  The prosecutor then asked, "And you just want to do what you want

11

to do, right?" Garcia responded, "No. I just want to get this over with so I can go to sleep."

At the conclusion of the hearing, the trial court found that Garcia violated the terms of her community supervision and revoked it. The court then found her guilty of aggravated assault with a deadly weapon and sentenced her to twenty years' imprisonment. The court also found her guilty of tampering with physical evidence and sentenced her to ten years' imprisonment, to run concurrently. This appeal ensued.

## II. Voluntary Pleas

By her first issue, Garcia argues that the trial court erred by finding that her pleas of "true" in the revocation proceeding and "guilty" to the charge of tampering with physical evidence were voluntary. Garcia argues that at the beginning of the hearing, she believed she would be sentenced to four years in prison pursuant to a plea bargain. After the plea bargain was withdrawn, Garcia's plea was rendered involuntary because she was "no longer properly informed of the consequences of her plea." The State points out that after the plea was withdrawn, Garcia was admonished numerous times that she could have a continuance to consider the charges more fully, but Garcia refused that offer and insisted on pleading to the charges. We agree with the State that Garcia has not shown that her plea is involuntary.

### A. Standard of Review

When considering the voluntariness of a guilty plea, we examine the record as a whole. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam). "A finding that a defendant was duly admonished creates a prima facie showing that a guilty plea was entered knowingly and voluntarily." *Id.* Despite a proper admonishment,

a defendant may still claim his or her plea was involuntary, but the burden in that case shifts to the defendant to prove that he or she "did not fully understand the consequences of his plea such that he suffered harm." *Id.*

## B. Application

In this case, it is undisputed that Garcia was admonished as to the consequences of pleading "true" to the allegations in the State's motion to revoke. Furthermore, with respect to the evidence tampering charge, Garcia was admonished that if the trial court did not accept the plea agreement, she would be free to withdraw her guilty plea and proceed to trial. Garcia was duly advised of the punishment ranges for the offenses. Thus, the burden shifted to Garcia to prove that her pleas were involuntary. *Id.*

Garcia relies on the events that occurred prior to and at the beginning of the revocation and plea hearing to argue that she did not understand the consequences of her pleas. Garcia argues that she believed the evidence tampering charge would be dismissed and that she would receive four years' imprisonment for the aggravated assault because of the plea bargain. That may have been true at the beginning of the hearing. However, the State revoked the plea bargain immediately thereafter and stated that it would not agree to the deal. Garcia's brief does not acknowledge or address the fact that the trial court, Garcia's attorney, and the State offered to let Garcia have a continuance to consider her pleas and the opportunity to go to trial, but Garcia refused. Furthermore, Garcia's claim that she did not understand the consequences of her pleas of "true" and "guilty" is belied by her repeated acknowledgment that she understood the range of punishment and that no plea bargain was being offered. In fact, she expressly responded that she

13

understood that her punishment was "up to the Judge." Under the circumstances, given the repeated admonishments and Garcia's repeated insistence on proceeding with the hearing, along with her consistent acknowledgment that she understood what was transpiring and the consequences of her pleas, we hold that Garcia failed to prove that her pleas were involuntary. *Cf. Huffman v. State*, 676 S.W.2d 677, 682 (Tex. App.–Houston [1st Dist.] 1984, no pet.) (holding that the defendant's plea was not voluntary where it was based on promises by the State and by the defendant's attorney that the State would seek leniency with the trial court in sentencing if the defendant pleaded guilty and testified). We overrule Garcia's first issue.

### III. SUFFICIENCY OF THE EVIDENCE

By her second issue, Garcia argues that the State's evidence of her guilt is insufficient to support her conviction for tampering with physical evidence. We disagree.

### A. Standard of Review and Applicable Law

When a defendant enters a plea of guilty to a felony, the State must introduce evidence into the record showing that the defendant is guilty of the alleged crime. *See* TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon 2005). "No trial court is authorized to render a conviction in a felony case, consistent with Article 1.15, based upon a plea of guilty 'without sufficient evidence to support the same.'" *Menefee v. State,* 287 S.W.3d 9, 13 (Tex. Crim. App. 2009) (quoting TEX. CODE CRIM. PROC. ANN. art. 1.15). As the Texas Court of Criminal Appeals has explained, the evidence used to support a guilty plea may take many forms, including a sworn written statement admitting culpability:

> [O]ur case law has recognized that the defendant may enter a sworn written statement, or may testify under oath in open court, specifically admitting his

14

culpability or at least acknowledging generally that the allegations against him are in fact true and correct; and again, so long as such a judicial confession covers all of the elements of the charged offense, it will suffice to support the guilty plea. However, a stipulation of evidence or judicial confession that fails to establish every element of the offense charged will not authorize the trial court to convict. A conviction rendered without sufficient evidence to support a guilty plea constitutes trial error.

*Id.* at 13-14 (footnotes and citations omitted). A person commits the offense of tampering with evidence if the person, "knowing that an investigation or official proceeding is pending or in progress, . . . (1) alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility or availability as evidence in the investigation or official proceeding . . . ." *See* TEX. PENAL CODE ANN. § 37.09.

**B.     Analysis**

Garcia argues that to support her guilty plea, the State was required to prove that Garcia knew that an investigation was "in progress." Garcia argues that at the time the officer approached her, the officer believed she was intoxicated. As the officer spoke to Garcia, he noticed her eyes were blood shot and that she had the odor of alcohol on her breath. Thus, she was placed under arrest for public intoxication. For these reasons, Garcia argues that an investigation for possession of drug paraphernalia was not "in progress," and the State did not prove that Garcia knew that an investigation for drug paraphernalia was "in progress."

Garcia's argument ignores the sequence of events set out in the offense report, which Garcia swore was "true and correct," and Garcia's testimony at the plea hearing. It is true that initially, Officer McMenamy believed that Garcia had been drinking alcohol. But before he got out of his car to speak with her, she was making attempts to conceal the

15

pipe. As he exited the vehicle, Officer McMenamy told Garcia to keep her hands visible, which should have put her on notice that he was concerned about her actions in trying to conceal what was in her shirt.

After Officer McMenamy exited the car, Garcia again tried to reach into her bra. He ordered her to take her hand out, and she did. Garcia then stepped back and stumbled. Officer McMenamy asked Garcia if she had been drinking, and Garcia replied, "I'm fucked up fool." Officer McMenamy asked what Garcia had been attempting to conceal in her bra, to which she replied, "I don't have shit in my bra fool." Officer McMenamy asked Garcia to shake out whatever was in her bra, and she attempted to do so without allowing the left side to move away from her body, "as if she was trying to hold onto whatever she had in her bra." Officer McMenamy again told her to stop, and she finally did. All of this occurred before Garcia was placed under arrest for public intoxication. Thus, it is disingenuous to say that the investigation up to that point was only focused on Garcia's intoxication and not on what she was attempting to conceal in her bra. Furthermore, before Garcia destroyed the crack pipe, Garcia told Officer Bauer that she had a crack pipe in her bra. At that point, it should have been obvious to Garcia that the investigation was shifting to what she was concealing.

Based on all this evidence, we hold that the record supports Garcia's guilty plea and, in particular, a finding that she knew that an investigation of possession of drug paraphernalia was in progress at the time she destroyed the crack pipe. *See Williams v. State*, 270 S.W.3d 140, 143 (Tex. Crim. App. 2008) (holding that the evidence was sufficient to support a finding that the defendant knew an investigation was in progress,

16

where the defendant stepped on a crack pipe that fell out of his pocket during a patdown for weapons, even though the indictment said the investigation for weapons and not for possession of drug paraphernalia); *see also Dooley v. State*, 133 S.W.3d 374, 378 (Tex. App.–Austin 2004, pet. ref'd). We overrule Garcia's second issue.

## IV. CONCLUSION

Having overruled all Garcia's issues, we affirm the trial court's judgments in both appellate causes.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
*See* TEX. R. APP. P. 47.2(b).

Delivered and filed the
31st day of August, 2010.